UNITED STATES of America, Plaintiff-Appellee,

v.

Joe Willie PARKER, Defendant-Appellant.

No. 83–4425.

United States Court of Appeals, Fifth Circuit.

Dec. 27, 1983.

Claude LeRoy Pitts, Meridian, Miss., for defendant-appellant.

Pshon Barrett, Asst. U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before BROWN, THORNBERRY and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

The appellant, Joe Willie Parker, was convicted of violating 18 U.S.C. §§ 2 and 2113(c) by knowingly and willingly possessing, receiving and concealing money that

had been stolen from a federally insured bank. Parker appeals his conviction, asserting that the district court erred in ruling that the search warrant affidavit was sufficient. He argues that evidence resulting from the search should have been suppressed. We hold that the search warrant affidavit was insufficient, and the search was unlawful. The case is remanded to the district court for further findings of fact and law to determine whether certain evidence was admissible under exceptions to the exclusionary rule.

In October 1980, the branch of the Bank of Stonewall in Enterprise, Mississippi, was robbed by three men. Two men entered the bank and took $10,460 at gunpoint and one man remained outside in the getaway car. Later that day, a Mississippi Highway Patrol investigator and another officer obtained a search warrant authorizing the search of property occupied by Joe Willie Parker and his mother, Mary Gaddis. The officers searched the property and discovered $6,273 hidden under a barrel by the hog pen. Among the money found was $1,000 in bait money [1] from the Bank of Stonewall. Appellant Joe Willie Parker and two other individuals were arrested and charged with robbing the Bank of Stonewall. Appellant escaped from the Clarke County jail in Mississippi in November 1980 and was apprehended in New Orleans, Louisiana, in April 1981.

Appellant was indicted for violating 18 U.S.C. §§ 2 and 2113(c). At the hearing on the Motion to Suppress Evidence before United States District Judge Harold Cox, appellant challenged the sufficiency of the search warrant and affidavit. Judge Cox held that the affidavit was sufficient on its face. Appellant was convicted by a jury and sentenced to ten years in prison, with a $2,500 fine.

## I.  *An Illegal Search*

■ Appellant argues that the search warrant affidavit was insufficient because it failed to give any information from which a neutral magistrate could determine probable cause. For the first time on appeal, the government concedes that the affidavit was insufficient and the warrant was invalid. In describing the circumstances creating probable cause, the affidavit simply stated, "Information given by a reliable & credible person who had given correct information in the past that led to arrests & convictions." There is no question that this statement, which is merely conclusory, is insufficient to show probable cause. *See Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■ The government argues that the search was legal because appellant's mother consented to the search. We do not agree. Mrs. Gaddis was informed that a search would be conducted as soon as the officers obtained a search warrant. When they arrived with the warrant, she allowed them to search the property. If the government relies on consent to justify a search, it has the burden of proving with clear and convincing evidence that consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). The government has shown only acquiescence to the search warrant, and this is not enough to discharge its burden. *Id.*

■ Because the search warrant was invalid, the search of appellant's home was in violation of the Fourth Amendment. Under the exclusionary rule, such evidence cannot be used in a criminal trial against the victim of the illegal search and seizure. The fact that certain evidence should have been suppressed, however, does not automatically reverse the conviction. Two issues must be considered in determining whether appellant's conviction must be reversed. The first issue concerns the admission of evidence which clearly should have been excluded and whether this error was harmless beyond a reasonable doubt. *See*

---

1. The bank records serial numbers of certain bills kept in the teller's drawer so that if stolen money is later recovered it can be traced to that bank.

*Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The second issue is whether other evidence, which is the indirect product of the search, falls within an exception to the exclusionary rule. The testimony of three witnesses must be examined in this case: (1) the testimony of the officer who found the money on appellant's property; (2) the testimony of appellant's brother, Joe B. Parker; and (3) the testimony of F.B.I. agent Michael Poche, who described statements made by appellant following his arrest in New Orleans. At trial, appellant timely objected to the testimony of these witnesses as fruit of an illegal search.

## II. *Evidence Produced Directly by the Search*

The testimony of the highway patrol officer who stated that the money stolen from the bank was found hidden on appellant's property should have been suppressed. This was direct evidence discovered during an illegal search. The government argues that this error does not justify a reversal because the fact that the money from the bank robbery was hidden on appellant's property was clearly established by other evidence. We agree with the government on this point.[2] After viewing the record as a whole, we believe beyond a reasonable doubt that the evidence produced by the officer's testimony would not have changed the verdict. The error, there-

fore, was harmless error. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Anderson,* 577 F.2d 258 (5th Cir.1978); *United States v. Resnick,* 483 F.2d 354 (5th Cir.), *cert. denied,* 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973).

The highway patrol officer testified that $6,280 was found hidden under a barrel, and some of this money was bait money stolen from the Bank of Stonewall. Without this testimony, the record contains clear evidence that the money from the bank robbery was hidden on appellant's property.

Joe B. Parker (appellant's brother) testified that James Parker (another brother) and James Hill came to the house with a sack of money on the day the bank was robbed. Later that day, appellant told Joe B. Parker that some of the money was hidden under a tire at home. Joe B. Parker looked under the tire and found $500.

Appellant also testified that the money was hidden on his property. He stated that he saw the sack of money at the house and that he knew that the sack was hidden under a barrel on the property.

A third source of this information in the record is the testimony of F.B.I. agent Michael Poche. Poche stated that appellant made certain admissions following his arrest in New Orleans. *See* part IIIB, *infra.* These admissions, as related by Poche, re-

---

**2.** In the alternative, the government argues that the evidence of the search should not be suppressed because it falls under the good faith exception to the exclusionary rule. *See United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (*en banc*), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981). This exception has been applied to situations involving warrants. In *United States v. Mahoney,* 712 F.2d 956 (5th Cir.1983), an arrest warrant was invalid due to failure to identify the person with sufficient specificity, and the court applied the good faith exception. The court, however, expressly declined to address the issue of whether this exception could ever apply in situations in which the arrest or search warrant lacked probable cause. *Id.* at 960 n. 4.

We will not consider in this case the government's argument that the good faith exception can be extended to situations in which a search

warrant lacked probable cause on its face. The government raised this issue for the first time on appeal, and, as a general rule, this court will not consider issues not raised in the district court. *See Hudspeth v. United States,* 519 F.2d 1055, 1056 n. 1 (5th Cir.1975). Whether a question will be resolved for the first time on appeal is a matter of discretion of the courts of appeal. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). The question here is not purely a legal issue; it requires an inquiry into the circumstances surrounding the search. Such facts were not developed in the district court. *See Guerra v. Manchester Terminal Corporation,* 498 F.2d 641, 658 n. 47 (5th Cir.1974) ("ordinarily a reviewing court does not consider issues raised for the first time on appeal, except where a pure question of law is involved and a refusal to consider it would result in a miscarriage of justice").

vealed that the money from the bank robbery was hidden under the barrel.

The testimony of these three witnesses established the fact that money taken from the Bank of Stonewall was hidden under a barrel on the property. The testimony of the officer who found the money in that location was merely cumulative. The admission of that testimony, in view of other evidence on that issue, was harmless beyond a reasonable doubt. This holding, however, assumes that the testimony of Joe B. Parker and Michael Poche is admissible evidence. *See* part III, *infra.* If the testimony of either of these witnesses is inadmissible under the exclusionary rule, the error in admitting the officer's testimony cannot be harmless error.

### III. *Indirect Products of the Illegal Search: Fruit of the Poisonous Tree?*

■ The illegal search put the government on a trail that led to the testimony of two witnesses in this case: Joe B. Parker and F.B.I. agent Michael Poche. The fact that the search was the "but for" cause of the discovery of this evidence is not determinative of the issue of whether it is admissible evidence.

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Wong Sun v. United States,* 371 U.S. 471 at 487–88, 83 S.Ct. 407 at 417, 9 L.Ed.2d 441, *quoting* R. Maguire, *Evidence of Guilt* 221 (1959).

■ The courts have developed three types of situations in which the evidence is sufficiently distinguishable from the illegal search to be purged of its taint. These exceptions to the exclusionary rule occur where (1) the evidence (physical evidence, witness testimony, or the accused's statement) has an attenuated link to the illegally secured evidence, *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939); (2) the evidence derives from an independent source, *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); *United States v. Houltin,* 566 F.2d 1027 (5th Cir. 1978); .or (3) the derivative evidence would inevitably have been discovered during a police investigation without the aid of the illegally obtained evidence, *Brewer v. Williams,* 430 U.S. 387, 406 n. 12, 97 S.Ct. 1232, 1243 n. 12, 51 L.Ed.2d 424 (1977); *United States v. Brookins,* 614 F.2d 1037, 1044 (5th Cir.1980).

We must examine the testimony of Joe B. Parker and Michael Poche to determine whether that evidence falls within an exception to the exclusionary rule.

### A. *The Testimony of Joe B. Parker*

■ Although the record is not clear on this point, it seems that Joe B. Parker was arrested and questioned about the bank robbery shortly after the illegal search. He was not charged with any crime, and served as a government witness in this case. Since the discovery of this witness seems to have been a result of the illegal search, the burden is on the government to prove that this testimony falls within one of the exceptions to the exclusionary rule. *United States v. Houltin, supra.* The government did not have an opportunity to discharge this burden because the district court had ruled that the search warrant was valid.

■ In addressing the question of whether evidence fits under an exception to the exclusionary rule, a court must examine all of the facts relating to the discovery of that evidence. The parties did not have an opportunity to develop those facts in the district court. We therefore remand the case to allow the introduction of more evidence on this issue.

The fact that this evidence involves testimony of a live witness may lessen the government's burden of proof. In *Smith v. United States,* 324 F.2d 879 (D.C.Cir.1963), then Circuit Judge Burger wrote, "[T]he living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence." 324 F.2d at 881–82; quoted in *United States v. Houltin,* 566 F.2d at 1032.

The test to be applied to witnesses discovered through an illegal search was set out in *United States v. Ceccolini,* 98 S.Ct. at 1060–61. In *Ceccolini,* the court first assessed "the degree of free will exercised by the witness." *Id.* 98 S.Ct. at 1060. Then the Court balanced the social cost of exclusion against the "deterrent purpose of the exclusionary rule." *Id.* 98 S.Ct. at 1060–61. "Both the voluntariness requirement and the greater social cost requirement are more readily satisfied when the challenged derivative evidence is testimony rather than physical evidence. *Id.* [435 U.S.] at 276–77, 278, 98 S.Ct. at 1060–61." *United States v. Brookins,* 614 F.2d 1037 (5th Cir.1980) (citing *Ceccolini* ).

Several factors can be considered in determining whether the testimony of a live witness is attenuated of the taint of an illegal search. One factor is whether the witness came forward "by his own volition, regardless of his identification by the illegal search." *United States v. Marder,* 474 F.2d 1192, 1196 (5th Cir.1973).

The fact that a witness is not anxious to testify may not render his testimony involuntary. In *United States v. Houltin,* two witnesses had been involved in the same crime as defendants. Defendants argued that the witnesses/codefendants did not want to testify, and did so only because their lawyer told them they had no legal alternative. (Refusal to testify could have meant citation for contempt and an adverse affect on their pending motions for reduction of sentence.) The court stated, "This, however, indicates only that their testimony was not volunteered; it does not necessarily render it involuntary.... In short, codefendants' choice may have been hard, but it was a choice nonetheless." 566 F.2d at 1032.

Another factor is " 'evidence that the witness was completely uncooperative when originally discovered by the illegal search but later changed his attitude and supplied the necessary information.' " *Id.* (quoting *United States v. Marder,* 474 F.2d at 1196).

On remand, both parties can develop evidence relating to these factors. The government may also choose to attempt to prove that Joe B. Parker's testimony falls under the independent source exception [3] or the inevitable discovery exception.[4]

### B. *Testimony of F.B.I. Agent Michael Poche*

Appellant was arrested in New Orleans five months after his escape from jail. He was advised of his rights before questioning and he signed a waiver of rights form. Poche testified that during questioning, the appellant, while trying to deny his culpabili-

---

**3.** The two witnesses in *Houltin* fell under the independent source exception as well as the "attenuated taint" exception. Although the government first learned of the details of their marijuana smuggling activities through an illegal wiretap, the court held that the codefendants' testimony came from their own knowledge of the operation, not from the illegal wiretaps, and the testimony therefore constituted an independent source. 566 F.2d at 1031.

**4.** In the *United States v. Brookins,* the court stated, "Like other circuits that have adopted the [inevitable discovery exception], we do not require absolute inevitability of discovery but simply a reasonable probability that the evidence in question would have been discovered other than by the tainted source." 614 F.2d at 1042, n. 2. The court added two requirements to the exception: "first, that the prosecutor demonstrate[s] that the leads, which made discovery inevitable, were possessed by the police and were being actively pursued by the police prior to the occurrence of the illegal police conduct; second, that the evidence in question was the voluntary testimony of a witness." *Id.*

ty in the bank robbery, admitted that he had hidden the money from the robbery under the barrel. Appellant refused to sign a written statement, and at trial denied that he told Poche that he hid the money.[5]

Appellant argues that, as fruit of the illegal search, Poche's testimony should have been suppressed. For the causal chain between the illegal search and appellant's statement to the agents to be broken, the statement must have been voluntary, and "sufficiently an act of the free will to purge the primary taint." *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975); *United States v. Miller,* 608 F.2d 1089, 1102 (5th Cir.1979), *cert. denied,* 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1119 (1980). In other words, it is possible for a confession to fall within the "attenuated taint" exception to the exclusionary rule if the government can show enough free will on the part of defendant to purge the primary taint. The fact that appellant was given *Miranda* warnings, standing alone, will not prove that the statement was sufficiently an act of free will. *Brown v. Illinois,* 95 S.Ct. at 2254.

Whether a confession was enough of a product of free will to break the chain will depend on the facts of each case. *United States v. Miller,* 608 F.2d at 1102. "Factors to be considered, in addition to warnings, are the temporal proximity of the illegality and the confession, the presence of intervening circumstances, and, particularly, the purpose and flagrance of the official misconduct." *Id.* The record in the present case seems to establish some of these factors in favor of the government, but some questions remain.

Appellant's statements were made over five months after the illegal search. This time lapse, while helpful to the government's proof, may be deceptive. The record does not describe the circumstances of appellant's arrest in New Orleans, and it is not clear whether the F.B.I. agents used illegally obtained evidence to persuade appellant to talk.

Regarding the purpose and flagrancy of the official misconduct, the record shows that the officers went before a magistrate to obtain a search warrant before the search. This is another factor to be taken into account in analyzing the "attenuation of the taint" exception.

Whether an accused's statement is sufficiently an act of free will to attenuate the taint of an illegal search requires consideration of all of the facts. In the present case the parties had no opportunity to develop those facts. We therefore remand to the district court to determine whether the testimony of Michael Poche, as well as that of Joe B. Parker, is admissible under an exception to the exclusionary rule.

## IV.  *Conclusion*

The testimony of both Joe B. Parker and Michael Poche must fall within an exception to the exclusionary rule for appellant's conviction to stand. Although we hold the admission of testimony of the officer who found the money during the illegal search was harmless error beyond a reasonable doubt, if the testimony of either Joe B. Parker or Poche should have been suppressed under the Fourth Amendment exclusionary rule, appellant's conviction must be reversed.

The case is remanded to the district court for further findings in accordance with this opinion.

---

**5.** Appellant testified that he told the F.B.I. agents that his brother, James Parker, hid the money.