**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mario PRIETO–TEJAS,**
**Defendant-Appellant.**

**No. 85–1069.**

United States Court of Appeals,
Fifth Circuit.

Jan. 6, 1986.
Rehearing Denied March 4, 1986.

Lucien B. Campbell, Federal Public Defender, Kevin E. Shannon, Asst. Federal Public Defender, El Paso, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Mike McDonald, Sidney Powell, Michael R. Hardy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GARWOOD, HIGGINBOTHAM, and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Mario Prieto-Tejas appeals his conviction for possession of cocaine with intent to distribute in violation of 21 U.S.C.

§ 841(a)(1); conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846; and carrying a firearm unlawfully during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). He argues that the evidence was insufficient to support each conviction. We affirm the narcotics convictions and reverse the conviction for carrying a firearm unlawfully during the commission of a felony.

### Facts and Proceedings Below

On October 7, 1984, Border Patrol Officer Michael Jackson stopped Mario Prieto-Tejas and Guillermo Dusal at the Sierra Blanca traffic checkpoint on Highway I–10 in Hudspeth County, in far west Texas. Dusal was driving a 1978 Oldsmobile and Prieto-Tejas, who owned the automobile, was riding in the front passenger seat. When Jackson approached the vehicle, he noticed that both men were wearing an "excessive" amount of gold jewelry. As Jackson questioned the men about their citizenship, he smelled burning marijuana and observed several partially burned marijuana cigarettes in the car's ashtray. Jackson then directed the vehicle to a secondary inspection area.

At the secondary inspection point, Jackson asked Dusal and Prieto-Tejas to step out of the vehicle and continued questioning them about their citizenship. Both men informed Jackson that they were from Cuba. Dusal stated that he had no identification; Prieto-Tejas produced an I–94 immigration form. Jackson then searched the vehicle. He observed that the lower right door panel was loose; when he pulled it open, a small plastic bag of cocaine fell to the floorboard. At that point, Jackson took Dusal and Prieto-Tejas to a holding cell in the checkpoint trailer. He then resumed his search of the vehicle. He found a small bag of marijuana in the glove compartment,[1] and under the upholstery of the front seat center arm rest he found a large plastic bag of cocaine and a .25 caliber pistol. A search of the trunk disclosed a counterbalance metric scale bearing traces of cocaine.

Drug Enforcement Administration (DEA) Agent Larry Nichols arrived at the checkpoint and interviewed Dusal and Prieto-Tejas. Dusal told Nichols that he lived in San Antonio, but had traveled to California several weeks earlier and had worked there as a waiter. Prieto-Tejas said that he worked as a dishwasher in Los Angeles and bought and sold gold jewelry. Dusal informed Nichols that Prieto-Tejas had purchased the car in California and, because he was unable to drive, had elicited Dusal's help to drive to San Antonio. Prieto-Tejas testified at trial that he paid $2,250 in cash for the vehicle in Los Angeles on October 2, 1984. Because Dusal wished to return to San Antonio, he agreed to drive for Prieto-Tejas. When questioned at the checkpoint, Prieto-Tejas told Nichols that the cocaine belonged to him, but denied knowledge of the gun. Dusal admitted ownership of the gun, but said he had placed it in the back seat of the car and suspected that Prieto-Tejas had moved it to the front armrest. He also stated that the cocaine belonged to Prieto-Tejas and that he had seen him use it during the journey.

Chemical analysis of the substance seized at the checkpoint revealed that the smaller bag held 2.89 grams of 73 percent pure cocaine and that the larger bag found in the armrest contained 27.79 grams of 82 percent pure cocaine. The residue found on the counterbalance metric scale also was identified as cocaine. At trial, DEA Agent Nichols testified that the street value of an ounce of cocaine (approximately twenty-eight grams) ranges from $2,200 to $2,500, especially when bought in bulk. He said that the current price per gram on the street is about $78 to $100. He further explained that the average purity of cocaine found on the street is 25 percent. Therefore, an ounce of 84 percent cocaine could be diluted and sold as three ounces

---

1. The defendants were not charged with any offenses relating to the marijuana found in the car.

on the street. On cross-examination, Nichols stated that a user may consume cocaine of 80 percent purity, that high purity cocaine can be found on the street, and that an ounce of such purity is still worth $2,200 to $2,500.

Dusal and Prieto-Tejas were indicted and were convicted by a jury on all three counts. Both were sentenced to two concurrent five-year prison terms for the narcotics violations, and one five-year term for the firearms count, which was to run consecutively to the other sentences. Prieto-Tejas timely filed this appeal.

### Discussion

*Standard of Review*

Prieto-Tejas challenges the sufficiency of the evidence underlying each conviction.[2] In considering his claims, we must view the evidence and all reasonable inferences that may be drawn from the evidence in a light most favorable to the government. We must find the evidence sufficient to support a conviction if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Barnes,* 761 F.2d 1026, 1031 (5th Cir.1985); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

*Possession with Intent to Distribute*

A conviction for possession of a controlled substance in violation of 21 U.S.C. § 841(a)(1)[3] requires proof of knowing possession with intent to distribute (or manufacture or dispense) the substance. *United States v. Cardenas,* 748 F.2d 1015, 1019 (5th Cir.1984). Both possession and intent to distribute may be proved by circumstantial evidence. *Id.* at 1019, 1022–23; *see United States v. Rogers,* 719 F.2d 767,

769–71 (5th Cir.1983). Prieto-Tejas admitted knowing possession of all the cocaine found in his car, but claimed that it was for his personal consumption and that the evidence failed to establish his intent to distribute. We disagree.

Intent to distribute a controlled substance may generally be inferred solely from possession of a large amount of the substance. *United States v. Goldstein,* 635 F.2d 356, 362 (5th Cir.), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3111, 69 L.Ed.2d 972 (1981); *United States v. Grayson,* 625 F.2d 66, 66 (5th Cir.1980). The purity and value of the substance also are relevant to the possessor's intent to distribute. *United States v. Ledezma-Hernandez,* 729 F.2d 310, 313 (5th Cir.1984); *United States v. Gonzalez,* 700 F.2d 196, 204 (5th Cir.1983). A quantity of narcotics too large to be used by the possessor alone "justifies the conclusion that possession was for distribution rather than personal consumption." *United States v. Mendoza,* 722 F.2d 96, 103 (5th Cir.1983).

The bags contained 27.79 grams of 82 percent pure cocaine and 2.89 grams of 73 percent pure cocaine. In total, the cocaine was worth between $2,200 and $9,000, depending on whether it was diluted before sale. The evidence suggested that this cocaine was of a purity *usually* diluted for distribution. A reasonable trier of fact could conclude that Prieto-Tejas intended the cocaine for distribution. *See United States v. Compton,* 704 F.2d 739, 742 (5th Cir.1983) (finding approximately thirty-three grams of cocaine—one bag of 82 percent and another of 83 percent purity—plus smaller bags of lesser purity to be

**2.** At the close of the government's evidence and at the close of all the evidence, Prieto-Tejas moved for acquittal on all three counts based on the insufficiency of the evidence. The district court denied the motions.

**3.** 21 U.S.C. § 841(a)(1) provides:
"(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...." Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812. *United States v. Berrojo,* 628 F.2d 368, 370 (5th Cir.1980); *Government of the Canal Zone v. Davis,* 592 F.2d 887, 890 (5th Cir.1979).

sufficient evidence of intent to distribute);[4] *United States v. Vergara*, 687 F.2d 57, 62 (5th Cir.1982) (finding possession of $8,500 worth of heroin sufficient evidence of intent to distribute).

Prieto-Tejas testified that he was addicted to cocaine and that at the time of his arrest he had been using up to three or four grams a day for several months. He stated that he consumed thirty grams about every ten days when he was able to obtain it. He suggested that he consumed one to one and a half ounces at the least each month. He stated at trial that he had paid $1,200 for the approximately thirty grams of cocaine found in his car by the Border Patrol Agent. He also recounted that he had paid $2,250 in cash for the car five days before the trip. Prieto-Tejas further testified that he made $130 to $160 a week as a dishwasher. His testimony concerning his income from trading gold jewelry was somewhat uncertain and conflicting, but suggested that he made between $3,000 and $12,000 a year. Construed most favorably to him, his testimony would indicate that his total income was at the most $2,000 per month. But the jury could conclude from this evidence that he made less than half this amount.

A reasonable trier of fact could conclude that Prieto-Tejas intended to sell the cocaine based on one of two inferences. Prieto-Tejas accounts for possession of a large amount of cocaine by claiming to have a large habit. But such a habit would cost him at the very least $1,000 to $2,000 a month.[5] His testimony indicates that his income could not support a large consump-

tion of cocaine. Therefore, a reasonable factfinder could infer either that he did not use a large amount and intended to sell a portion of the cocaine, or that he did consume large amounts and also sold cocaine to supplement his income in support of his expensive habit.

The metric scale found in Prieto-Tejas's possession provides some further evidence of an intent to distribute cocaine. The scale had traces of cocaine in the weighing pans and the DEA agent testified that scales of this type are commonly used by those who sell cocaine, but not often by purchasers. The presence of the scale in addition to the quality and quantity of the cocaine and Prieto-Tejas's testimony concerning his cocaine use support a finding of his intent to distribute. Viewing the evidence in the light most favorable to the government, we conclude that a reasonable trier of fact could have found Prieto-Tejas guilty beyond a reasonable doubt of possession with intent to distribute.

*Conspiracy to Possess with Intent to Distribute*

■ Prieto-Tejas further contends that the evidence is insufficient to support his conviction for conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846.[6] To obtain a conviction under section 846, the government must prove beyond a reasonable doubt: (1) the existence of an agreement to violate the drug laws and each coconspirator's (2) knowledge of the agreement, (3) intent to join it, and (4) participation in the conspiracy. *United States v. Thomas*, 768 F.2d

---

**4.** In *Compton*, the court found the thirty-three grams of "near pure" cocaine in addition to the fifteen bags of lesser purity that were packaged for street sale to be sufficient evidence of intent to distribute. 704 F.2d at 742. There was no evidence as to the amount in the smaller bags. *Id.* Similarly, the thirty grams of high purity cocaine and the metric scale that belonged to Prieto-Tejas provide sufficient evidence of intent to distribute.

**5.** Prieto-Tejas testified that he spent a "thousand, something over" per month on cocaine. He also stated that at the least he used an ounce to an ounce and a half of cocaine a month; this

amount would have cost him more than $1,200 based on his testimony and more than $2,200 based on the testimony of the DEA agent.

**6.** 21 U.S.C. § 846 provides:
"Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."
For the text of 21 U.S.C. § 841(a)(1), see *supra* note 3.

611, 614 (5th Cir.1985); *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir.1985). The essence of a conspiracy in violation of section 846 is an agreement to violate the narcotics laws. *United States v. Vergara,* 687 F.2d 57, 60 (5th Cir.1982). But an express, explicit agreement is normally not required, and a tacit, mutual agreement with common design, purpose, and understanding will usually suffice. *United States v. Reed,* 715 F.2d 870, 874 (5th Cir. 1983). In a drug conspiracy prosecution, the government does not have to show an overt act in furtherance of the agreement.[7] A conspiracy conviction will not be reversed merely because a defendant did not know each detail of the conspiracy, became a member after its inception, or played only a minor role in the overall scheme. *Id.* at 61. The conspiracy need not be proved by direct evidence: "Although mere presence at the scene of the crime or close association with a coconspirator will not support an inference of participation in a conspiracy," *id.,* "a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" *United States v. Malatesta,* 590 F.2d 1379, 1381 (5th Cir.) (en banc) (quoting *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). Moreover, an agreement between coconspirators may often be inferred from concert of action. *Vergara,* 687 F.2d at 61; *United States v. Marx,* 635 F.2d 436, 439 (5th Cir.1981).

We find that the government has presented sufficient evidence to convict Prieto-Tejas of conspiracy to possess cocaine with intent to distribute. Dusal and Prieto-Tejas became acquainted in California several weeks before their journey. They entered into an agreement to travel together to San Antonio. Prieto-Tejas purchased a car and Dusal agreed to drive.

Both men were aware of the large amount of cocaine that they carried on the trip. Possession of a narcotic may be actual or constructive, may be joint with others, and may be proved by circumstantial evidence. *United States v. Cardenas,* 748 F.2d 1015, 1019 (5th Cir.1984). Dusal may be deemed to have been in constructive possession of the cocaine, which he knew of, because such possession may be proved when one "has dominion over or controls the premises or vehicle where contraband is seized." *United States v. Niver,* 689 F.2d 520, 529 (5th Cir.1982). In addition, for both Prieto-Tejas and Dusal the intent to distribute may be inferred from the quantity and quality of the cocaine in their possession and from possession of a scale of a type commonly used in the distribution of narcotics. Furthermore, both men were wearing a large amount of gold jewelry, although neither had a significant source of income.

The evidence was sufficient for a reasonable factfinder to infer a tacit agreement between Dusal and Prieto-Tejas and their knowledge, intent to join, and participation in the agreement. The evidence demonstrates more than Dusal's mere presence or close association with Prieto-Tejas. The two men clearly acted in concert in transporting a significant amount of cocaine. The evidence need not lead inexorably to the conclusion of a conspiracy; it is sufficient that a reasonable trier of fact could find beyond a reasonable doubt that Prieto-Tejas and Dusal conspired together to possess cocaine with intent to distribute.

*Unlawful Possession of a Firearm During Commission of a Felony*

Prieto-Tejas also challenges his conviction for carrying a firearm unlawfully during the commission of a felony in violation of 18 U.S.C. § 924(c)(2).[8] A conviction un-

---

7. A section 846 offense differs from other conspiracy offenses that require proof of an overt act in furtherance of the conspiracy. *See, e.g., United States v. McKenzie,* 768 F.2d 602, 606 (5th Cir.1985) (conspiracy to deprive citizens of civil rights).

8. 18 U.S.C. § 924(c)(2) provides:
 "(c) Whoever—
 "....
 "(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States,

der this statute requires: (1) that the defendant knowingly carried a firearm during the commission of a federal felony and (2) that the act of carrying a firearm violated an independent state, federal, or local law. *United States v. Pozos*, 697 F.2d 1238, 1243 (5th Cir.1983). We assume for purposes of this discussion that Prieto-Tejas knowingly carried a firearm during the commission of a felony. On this record, however, it appears that his possession of a firearm did not violate an independent law. Therefore, we reverse his conviction on this count.

The government's sole theory in this respect was that Prieto-Tejas carried a handgun in violation of Texas Penal Code Ann. § 46.02(a) (Vernon 1974).[9] Prieto-Tejas claims that, because he was traveling, section 46.03(a)(3) of the Texas Penal Code[10] exempted him from the prohibitions of section 46.02(a). The government argues that Prieto-Tejas cannot claim the traveler's exemption because his purpose in carrying the gun was illegal. Under Texas law, however, the purpose of the possession of a weapon is irrelevant to the application of the traveler's exemption:

> "So long as he is a traveler within the meaning of the law and is pursuing his journey, an inquiry as to his intent in carrying the pistol is not pertinent. The use made of the pistol possessed by one

"shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year nor more than ten years." Congress has amended this statute, effective November 1, 1986, to provide that whoever carries or uses a firearm in relation to any crime of violence shall be sentenced to imprisonment for five years. Pub.L. No. 98–473, §§ 223(a), 225, 98 Stat. 2028, 2031 (1984) (to be codified at 18 U.S.C. § 924(c)).

9. Texas Penal Code Ann. § 46.02(a) (Vernon 1974) provides: "A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club."

10. Texas Penal Code Ann. § 46.03(a)(3) (Vernon Supp.1985) provides: "(a) The provisions of Section 46.02 of this code do not apply to a person:... (3) traveling...."

11. *Grant* was decided under Vernon's Ann.Penal Code art. 484, the predecessor to section 46.03.

claiming the exemption may become relevant in determining the good faith of his claim, but if the jury determines upon appropriate facts that he is a traveler and in the pursuit of his journey, his use of the pistol, though unlawful, would not subject him to a conviction for the offense of unlawfully carrying arms." *Grant v. State*, 112 Tex.Crim. at 20, 13 S.W.2d 889, 890 (1929).[11]

In addition to those defenses expressly enumerated in section 46.03, there are several judicially created defenses, which are rooted in but expand up the statutory defenses. *Inzer v. State*, 601 S.W.2d 367, 368 (Tex.Crim.App.1980). A defendant raising a judicially created defense must show that his purpose in carrying the handgun is not unlawful.[12] One invoking a pure statutory exemption, however, need only prove the application of the statutory terms of the exception to his case. *Grant*, 13 S.W.2d at 890–91; *Deuschle v. State*, 109 Tex.Crim. 355, 4 S.W.2d 559, 560–61 (1927).

Both the government and Prieto-Tejas presented evidence that Prieto-Tejas was traveling from Los Angeles to San Antonio when carrying the handgun. At least once Prieto-Tejas's evidence demonstrated the applicability of the statutory exemption, the issue was raised.[13] The

12. *See, e.g., Evers v. State*, 576 S.W.2d 46, 51 (Tex.Crim.App.1978) (case law business exception requires that defendant carry the pistol for the purpose of protecting a large sum of money); *Johnson v. State*, 571 S.W.2d 170, 172 (Tex. Crim.App.1978) (case law exception of carrying handgun from old residence to new residence requires that the defendant not carry the pistol idly, merely for the sake of carrying it, habitually, or for unlawful purpose).

13. The Practice Commentary to section 46.03 of the Texas Penal Code states:

"[T]he burden of raising a defensive issue permitted by this section is on the defendant; the state does not have to negate the issue in the accusation or disprove it unless it is raised, but once it is raised the state must disprove it beyond a reasonable doubt."

*See also* Comment, *A Farewell to Arms?—An Analysis of Texas Handgun Control Law*, 13 St. Mary's L.J. 601, 607 (1982).

government clearly failed to offer any evidence that Prieto-Tejas was not a traveler within the meaning of the exemption. Because there is substantial, creditable evidence that Prieto-Tejas's handgun possession did not violate the Texas law since it was within the traveling exception, and since there is no contrary evidence, the jury could not properly have found him guilty of carrying a firearm unlawfully during the commission of a felony.[14]

Moreover, the jury was never instructed that possession of a handgun violated Texas (or any) law; nor did the government argue to the jury that Prieto-Tejas carried a handgun in violation of Texas law. The jury was instructed that the government must prove "that the defendant carried a firearm unlawfully during the commission of a felony." The court defined "unlawfully" to mean "the carrying of a gun which is prohibited by any law, be it a state law, a federal statute or a municipal ordinance." There was no instruction concerning section 46.02 or section 46.03 of the Texas Penal Code. Without any guidance or instruction concerning the applicable law, the jury could not possibly determine whether Prieto-Tejas unlawfully carried a gun.

During the trial, the defendant failed to object to the jury instructions or to submit a proper instruction concerning the lawfulness of the handgun possession. Nevertheless, under this record, the district court's failure to properly define "unlawfully" constitutes plain error. *United*

States v. Nanez, 694 F.2d 405, 411 (5th Cir.1982), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813 (1983).[15] Instructions that do not permit the jury to determine one of the elements of a crime are clearly in error. In *Nanez*, the court held that, because the defendant offered no proof that he came within one of the exceptions to the Texas handgun law, the district court's error in the jury instructions was not prejudicial. In the case before us, however, Prieto-Tejas has established conclusively that the traveler's exemption allowed him to lawfully carry the handgun. Because the district court's error was prejudicial, we reverse the section 924(c)(2) conviction. We further direct that the prosecution under section 924(c)(2) be dismissed.

### Conclusion

Having considered all the evidence in the light most favorable to the government, we affirm Prieto-Tejas's convictions for possession of cocaine with intent to distribute and for conspiring to possess cocaine with intent to distribute. The evidence does not establish that Prieto-Tejas unlawfully carried a firearm during the commission of a felony; and in light of the evidence, the court's instructions were wholly insufficient on this count. Accordingly, we reverse the conviction on this single count and direct that the prosecution thereon be dismissed.

AFFIRMED in part and REVERSED in part.

---

**14.** The government also argues based on *Evers v. State, supra* note 12, that Prieto-Tejas cannot raise the traveler's exemption without admitting possession of the handgun. This claim is without merit. In *Evers*, the defendant raised the traveler's exemption and the business exemption, for which latter exception the purpose of carrying the gun is relevant. To invoke the business exemption, the defendant had to be carrying the gun to protect a large sum of money. Prieto-Tejas does not have to prove anything other than that he was traveling. His position is not inconsistent: he logically can claim to be traveling, but deny possession of the gun.

**15.** In reviewing the district court's jury instructions, the court in *Nanez* commented that "be-

cause the defense neither requested a jury instruction on this point, nor objected to the court's instruction, our standard of review is limited to the existence of plain error." 694 F.2d at 411. Plain error should be noticed "only in exceptional circumstances to avoid a miscarriage of justice," *Eaton v. United States*, 398 F.2d 485, 486 (5th Cir.1968), when failure to notice the error would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Fowler*, 605 F.2d 181, 185 (5th Cir.1979) (quoting *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936)), *cert. denied*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).