UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernesto ROMERO–REYNA,
Defendant–Appellant.

No. 88–1437

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1989.

Elizabeth Rogers, First Asst. Federal Public Defender, Lucien B. Campbell, Federal Public Defender, El Paso, Tex., for defendant-appellant.

Mrs. LeRoy M. Jahn, Michael R. Hardy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, KING, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

Ernesto Romero–Reyna appeals his convictions of possession of marihuana and heroin with intention to distribute, challenging: (1) the trial court's ruling on a motion to suppress evidence; (2) the sufficiency of the evidence; and (3) the trial court's refusal to quash the jury panel because of *Batson* violations. Finding no merit in the first two challenges, but merit in the third, for the reasons assigned we remand for further proceedings.

### Background

On December 15, 1987, at approximately 10:00 a.m., two border patrol agents in a marked vehicle were patrolling the Rio Grande River's San Vincette crossing. They observed Romero on foot talking with a person on horseback. Upon sighting the agents the horseman headed toward the Rio Grande, one-half mile distant. The agents approached Romero and asked his citizenship. He replied that he was a U.S. citizen, and produced a temporary Texas driver's license. Asked why he was on foot, unusual in this secluded area, Romero responded that he had driven a man and his two children that morning from Fort Stockton, a city 140 miles distant, to the San Vincette crossing, and that he was in the process of returning to his vehicle, which needed a jump-start.

The agents followed Romero 100 yards or so to his vehicle, a Blazer, whose interior was uncommonly clean, containing only a gas can, funnel, and siphon hose. In response to an agent's inquiry, Romero said that the Blazer belonged to Luis Alberto Villarreal, a suspected local smuggler.

An agent opened the Blazer's tailgate revealing two shiny screws on straps securing the gas tank. Upon closer examination the agents became suspicious that the gas tank contained contraband. Romero was advised of his *Miranda* rights and placed in the agents' vehicle. The Blazer was driven to a Park Service garage where an inspection of the gas tank disclosed 42.5 pounds of marihuana and over a kilogram of heroin.

Romero was indicted for possessing with intent to distribute heroin and marihuana in violation of 21 U.S.C. § 841(a). The district court denied Romero's motion to suppress the contraband and the jury found him guilty on both counts. Romero was sentenced to 180 months on the heroin count and 60 concurrent months on the marihuana count, with concurrent five-year supervised release terms. He timely appealed.

### Analysis

In challenging on appeal the denial of his suppression motion, Romero raises for the first time the propriety of the initial contact between the agents and himself, and the discovery of the shiny screws, indicating tampering with the gas tank, made when the agent opened the Blazer's tailgate. These issues were not presented to the trial court and, as we have repeatedly declared, such issues will not be considered on appeal unless they involve only a question of law and the failure to consider them will result in manifest injustice. *Self v. Blackburn*, 751 F.2d 789 (5th Cir.1985); *United States v. Parker*, 722 F.2d 179 (5th Cir.1983); *United States v. Jackson*, 700 F.2d 181 (5th Cir.1983). Romero's complaints do not qualify; they involve factual issues.

Romero also maintains that there was insufficient evidence that he knowingly possessed with intent to distribute the contraband which was secreted in the gas tank. Our review of the record does not lead to that conclusion.

In our review we consider the evidence, and all reasonable inferences to be drawn from it, in the light most favorable to the government. *United States v. Prieto–Tejas*, 779 F.2d 1098 (5th Cir.1986).

Further, the evidence need not exclude every reasonable hypothesis of innocence, provided that a reasonable trier of fact could find guilt proven beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

■ To establish the offense of possession of a controlled substance with intent to distribute, the government must prove the knowing possession of the contraband with intent to distribute. *United States v. Williams–Hendricks,* 805 F.2d 496 (5th Cir.1986). "One who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband." *United States v. Olivier–Becerril,* 861 F.2d 424, 426 (5th Cir.1988), *quoting United States v. Vergara,* 687 F.2d 57, 62 (5th Cir.1982). The "proof that possession of contraband is knowing will usually depend on inference and circumstantial evidence." *United States v. Richardson,* 848 F.2d 509, 514 (5th Cir.1988). Further, "knowledge of the presence of the contraband may ordinarily be inferred from the exercise of control over the vehicle in which it is concealed." *Id.* at 513. But when the case involves "hidden compartments within a vehicle, reliance should not be placed solely on control of the vehicle," there should be corroboration such as "circumstances evidencing a consciousness of guilt." *Olivier–Becerril,* at 427.

■ The record contains sufficient evidence that Romero exercised dominion and control over the Blazer. He possessed the keys and led the agents to the Blazer. Moreover, the unusual circumstances evidenced his knowledge. Romero claimed to have driven it to the San Vincette crossing, arriving at 6:00 a.m. that morning. An arrival by 6:00 a.m. required a departure from Fort Stockton prior to 4:00 a.m. The interior of the vehicle was unusually clean, particularly after a multi-hour trip with four people, two of whom were children. The contents, a gas can, spout, and funnel, albeit ordinary, may be viewed in a different light when an experienced officer suspects a serious intrusion lessening the capacity of a gas tank. Such a diversion of gas-tank capacity would make frequent refilling necessary. In addition, Romero was found to have $1,860 hidden in his boot. He lied to the agents, falsely claiming to be a U.S. citizen. He said that the Blazer belonged to Villarreal; it did not. And he did not act surprised when the contraband was discovered. All of the foregoing constitute evidence of a consciousness of guilt sufficient to support the inference otherwise flowing from command of the vehicle.

Finally, the amount of heroin and marihuana satisfied the intent to distribute element. "Intent to distribute a controlled substance may generally be inferred solely from possession of a large amount of the substance." *Prieto–Tejas,* 779 F.2d at 1101. The quantity of heroin and marihuana seized far exceed the threshold for the inference of intent to distribute. The evidence was sufficient to support the jury's conclusion that *Romero* knowingly possessed the contraband with intent to distribute.

The third issue raised by Romero, however, requires a remand. Romero contends that the prosecutor violated his fifth amendment due process rights, as set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using the government's six peremptory challenges to strike Mexican–Americans from the jury. The jury venire contained eight Mexican–Americans; the jury panel contained one.

■ Although *Batson* involved a state conviction and expressly rests on the fourteenth amendment, its teachings apply to a federal prosecution. The fifth amendment due process clause includes an equal protection component paralleled in the fourteenth amendment. *United States v. Leslie,* 813 F.2d 658 (5th Cir.1987). In *Leslie* we remanded for "a hearing respecting the prosecution's use of its peremptory challenges," and directed the district court to "make findings under *Batson.*" *Id.* at 659.

■ Romero's counsel objected to the jury panel, urging *Batson.* The objection

was made immediately after completion of the selection of the jury, before the jury venire was dismissed and prior to the commencement of the trial. The objection was timely. *Batson; Jones v. Butler,* 864 F.2d 348, 370 (5th Cir.1989) ("The Supreme Court's analysis in *Batson* presumed that an objection would be made promptly, probably before the venire was dismissed."). *United States v. Forbes,* 816 F.2d 1006 (5th Cir.1987) (objection made just before the unchosen venire members were dismissed considered timely); *United States v. Erwin,* 793 F.2d 656 (5th Cir.1986) (objection made after jury venire released considered untimely). We hold that to be timely, the *Batson* objection must be made before the venire is dismissed and before the trial commences.

■ At a sidebar conference, conducted on the record but out of the earshot of the jury, the prosecutor explained the basis for his strikes. The entirety of that colloquy is as follows:

MR. BEERY [the prosecutor]: Let me get my notes.

MS. ROGERS [defense counsel]: Molinar is the only Hispanic that made it on the jury. There wasn't any double strikes that I could see.

MR. BEERY: Okay. With reference to Number 8, Olga Ybarra Carrasco, she is a single person, works at Sunset Inn. I did not feel that she would be an appropriate juror for the Government in this particular case. Primarily because she is single and primarily because she works at a motel.

THE COURT: She may be doing laundry there.

MR. BEERY: Could be. Oscar Prieto Fuentes, if you are going to go into my mind, I have a P rule, I never accept anyone whose occupation begins with a P. He is a pipeline operator. That has served me well over the years.

MS. ROGERS: Wait, you're going too fast.

MR. BEERY: That is 17. Number 19 is Lydia Gomez. I don't think—yeah, she was, Lydia Gomez is divorced and works as a community service aide. I thought she would be too liberal in a case of this nature. Also young.

The same reasoning applies to Number 31, Elva Lujan, college work study program, single, young. I thought she would be too liberal to serve on a jury.

The same reasoning applies somewhat to Number 36, Syria Ornelas. She is a housemother, but single. I thought she would be too liberal to serve on the jury from my point of view.

Number 38 is Virginia Pena. She is in the elderly meal program, which I took to mean some sort of welfare program. I also thought she was probably too liberal. I think that's all.

MS. ROGERS: That is six, right?

MR. BEERY: Yes.

THE COURT: Those are the peremptory challenges.

MR. BEERY: Those are my mental processes that I undertook to make what I have always considered to be a time honored tradition within the legal profession of peremptory challenges.

MS. ROGERS: And I am challenging the panel for that reason.

THE COURT: Denied.

To establish a *prima facie* case of purposeful discrimination, a defendant must show that "he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson,* 476 U.S. at 96, 106 S.Ct. at 1722 (citation omitted). Other relevant circumstances raising an inference of challenge because of race may be offered. Once this showing is made the prosecutor must "come forward with a neutral explanation" of his challenges. *Id.* at 97, 106 S.Ct. at 1723. The explanation need not rise to a level justifying a challenge for cause. The reason given, however, must be "a neutral explanation related to the particular case to be tried." *Id.* at 98, 106 S.Ct. at 1723 (footnote omitted). The prosecutor must give a " 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Id.* at 98 n. 20, 106 S.Ct. at 1723 n. 20.

On the record before us, which contains no *Batson* findings by the district court, we cannot conclude that the prosecutor gave a neutral, clear, and reasonably specific explanation of legitimate reasons for the peremptory challenges. That the district court make the *Batson* findings, relative to the challenges, particularly as respects the "P rule," is essential.

We remand in order that the district court may make the required *Batson* findings if it can do so on the present record. In that event, the district court is to make and certify its findings to this court for consideration by this panel. If the district court cannot make the mandated *Batson* findings on the present record, it shall so advise this court in order that this panel may proceed to a final disposition of this appeal.

REMANDED for further proceedings.