UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernesto ROMERO–REYNA,
Defendant–Appellant.

No. 88–1437
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 17, 1989.

Elizabeth Rogers, First Asst. Federal Public Defender, Lucien B. Campbell, Fed. Pub. Defender, El Paso, Tex., for defendant-appellant.

LeRoy M. Jahn, Michael R. Hardy, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before POLITZ, KING, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

On the prior appeal[1] we remanded for resolution of a *Batson*[2] challenge. Following an evidentiary hearing the district court concluded that no *Batson* violation had occurred. We affirm.

### Background

This case returns after a limited remand. We refer to our earlier opinion for the factual background, 867 F.2d at 835, recapping only those facts pertinent to this appeal.

Romero was arrested, indicted, tried and convicted of possession of marihuana and heroin with intent to distribute. Upon completion of the jury selection and before dismissal of the venire, defense counsel, invoking *Batson*, objected to the prosecutor's use of his peremptory challenges to excuse six members of the venire of Hispanic origin. The prosecutor explained his challenges in a sidebar conference.[3] Five potential jurors were struck because of a combination of factors—age, employment, and marital status—leading the prosecutor to conclude that they might be too lenient, given the charges against Romero. The sixth, a pipeline operator, was excused because of the prosecutor's "P rule," a self-imposed jury selection rule under which the prosecutor ostensibly never accepted a juror whose occupation began with a "P." Upon conclusion of the sidebar conference the trial court rejected the *Batson* objection. Romero was tried and convicted.

On appeal Romero questioned the *Batson* ruling, the sufficiency of the evidence, and the court's ruling on a motion to suppress. We rejected the latter two assignments of error, but remanded in order that the trial court might make the findings mandated by *Batson*, a prerequisite for proper appellate review of that issue. We invited the trial court to make the required findings on the record before it, if it could do so, and to certify its findings and conclusions for final disposition of this appeal.

On remand, over the objections[4] of Romero's counsel, the trial court opted to

---

1. *United States v. Romero–Reyna,* 867 F.2d 834 (5th Cir.1989).

2. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. The transcript of this brief sidebar conference is set forth in full in our earlier opinion. 867 F.2d at 837.

4. Counsel for Romero argued that we remanded for action by the trial judge based on the record only, and that the prosecutor should not be

hold an evidentiary hearing to delve more deeply into the prosecutor's reasons for striking the six Hispanic members of the jury venire. The prosecutor reiterated the reasons given for striking the five whose leniency he had questioned. As to the sixth, the "P rule" casualty, the prosecutor repeated his adherence to his "P rule,"[5] asserting that he applied it without regard to race. He then added a reason for rejecting that particular venireman, testifying that he had been informed that the use of marihuana by pipeline operators was somewhat prevalent. Because of the charges against Romero the prosecutor preferred to excuse any juror who, even tangentially, might be involved with marihuana. The prosecutor stressed that he had failed to mention this additional reason earlier because the suddenness and rapid pace of the sidebar discussion had prevented him from fully collecting his thoughts.

After reflecting on the trial record and the evidence developed at the evidentiary hearing the district court made findings and concluded that the prosecutor had offered a sufficient explanation for each peremptory strike. The court rejected the "P rule" as a legitimate neutral basis for striking the pipeline operator because the prosecutor had accepted three Anglos whose occupations were: (1) area production supervisor, (2) payroll clerk, and (3) parttime secretary. Nonetheless, the court deemed it appropriate in this case to permit the prosecutor an opportunity to expand upon those elements which had factored into his exercise of the peremptory challenges. Considering the added explanation, the district court found that the peremptory challenge of the pipeline operator also passed *Batson* muster. With these findings and conclusions now before us we may conclude our disposition of this appeal.

*Analysis*

■ In light of our earlier holding that Romero had made out a *prima facie* case of the discriminatory use of peremptory challenges, 867 F.2d at 837, the sole issue remaining is whether the prosecutor articulated a "neutral explanation related to the particular case to be tried." *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724. In doing so, we are mindful of the "great deference" *Batson* requires us to accord the trial court's credibility determinations. 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. As we recently stated:

> The decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and, often, the reasons behind that decision cannot be easily articulated. Determining whether a prosecutor has acted discriminatorily in his use of a peremptory challenge depends greatly upon the observations of the presiding judge ... This firsthand review by the trial court is vital to the balance struck between the historical role and practice of peremptory challenges and the demands of equal protection.

*Thomas v. Moore,* 866 F.2d 803, 805 (5th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989) (citations omitted). *See United States v. Terrazas–Carrasco,* 861 F.2d 93 (5th Cir.1988); *United States v. Lance,* 853 F.2d 1177 (5th Cir. 1988); *United States v. Forbes,* 816 F.2d 1006 (5th Cir.1987).

■ Focusing only on the record as it existed at the time of the trial, Romero contends that there is nothing to overcome his *prima facie* case. We reject this narrow focus and consider the entire record, including the evidentiary hearing on remand.[6]

given an opportunity to elaborate on the reasons for his strikes.

5. The prosecutor conceded that he, too, had once thought the "P rule" irrational until he suffered two mistrials, one of which he attributed to a juror who was a pharmacist and the other to a juror who was a postal worker.

6. Romero argues that the trial judge's decision to hold a hearing exceeded the scope of our

remand and permitted the prosecution a "second bite of the apple" by allowing an opportunity to proffer a post hoc explanation for what otherwise would have, by the trial judge's own assessment, been a *Batson* violation. Our remand did not forbid a hearing. It was within the trial judge's discretion to hold a hearing if he felt it necessary to a proper resolution of the claims raised. *See United States v. Chalan,* 812 F.2d 1302 (10th Cir.1987), *cert. denied,* — U.S.

In his testimony at the evidentiary hearing the prosecutor provided his reasons for each peremptory challenge. He essentially repeated a fuller version of the explanation offered at the sidebar conference, which had immediately followed completion of the jury selection, plus an additional reason for excusing the pipeline operator. The trial court considered the added reason legitimate and credible. We will not lightly reject a trial court's credibility assessment based on its first-hand knowledge of the trial and of the prosecutor, and its evaluation of the evidence and ambience of the evidentiary hearing specifically held for that purpose. We accept the trial court's findings and conclusions. Romero's *Batson* challenge fails.

The convictions and sentences are AF-FIRMED.

——, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988) (prosecutor may offer additional reasons for exercise of peremptory challenges on remand); *United States v. Horsley,* 864 F.2d 1543 (11th Cir.1989) (same). *Cf. United States v. Leslie,* 813 F.2d 658, 659 (5th Cir.1987). Although a subsequent hearing might provide an opportunity for the prosecutor to present reasons for strikes that did not exist at the time of voir dire, that possibility is fit grist for the trial judge's mill as he assesses the prosecutor's credibility.