PER CURIAM:
 

 The appellant, H. B. Haymes, was charged with 40 counts of bankruptcy fraud in violation of 18 U.S.C.A. § 152. Specifically, the indictment alleged that on 40 occasions between April 4, 1975, and October 7, 1975, appellant transferred or caused to be transferred funds from his corporation, Commodity International' Corporation (CIC), to himself “in contemplation of bankruptcy proceedings and with intent to defeat the bankruptcy laws.”
 
 [1]
 
 A jury convicted appellant on counts 12-40 (transfers between June 2, 1975, and October 7, 1975) and acquitted him on counts 1-11 (transfers between April 4, 1975, and May 30, 1975). He was sentenced to three years’ imprisonment for each of counts 12-40, with sentences to run concurrently. He was also fined $500 on each count, for a total fine of $14,500.
 

 On this appeal, appellant raises two issues. First, he contends that the District Court improperly permitted the Government to amend its indictment. Second, he contends that the evidence was insufficient to sustain his conviction on counts 12 — 39, although he does not challenge the sufficiency of evidence with respect to count 40. Finding neither of appellant’s arguments persuasive, we affirm the District Court.
 

 The “And Or" Dilemma
 

 In the indictment, the Government charged appellant with transferring funds “in contemplation of bankruptcy proceedings
 
 and
 
 with intent to defeat the bankruptcy laws.” (Emphasis added.) The statute prohibits fraudulent transfers made “in contemplation of a bankruptcy proceeding . or with intent to defeat the bankruptcy law.” 18 U.S.C.A. § 152 (emphasis added). In accordance with the statute, the District Court charged the jury that the law required the transfer of funds to be in contemplation of bankruptcy
 
 or
 
 with intent to defeat the bankruptcy laws. Appellant contends that by giving this charge, the District Court improperly permitted the Government to amend its indictment.
 

 It is well-established in this Circuit that a disjunctive statute may be pleaded conjunctively and proved disjunctively.
 
 United States v. Quiroz-Carrasco,
 
 5 Cir., 1978, 565 F.2d 1328, 1331;
 
 Cunningham v. United States,
 
 5 Cir., 1966, 356 F.2d 454, 455-56;
 
 Price v. United States,
 
 5 Cir., 1945, 150 F.2d 283, 284-85. As this Court stated almost thirty-five years ago:
 

 When several acts specified in a statute are committed by the same person, they may be coupled in one count as together constituting one offense although a dis
 
 *311
 
 junctive word is uséd in the statute, and proof of any one of the acts joined in the conjunctive is sufficient to support a verdict of guilty.
 

 Price v. United States, supra,
 
 150 F.2d at 285. As a corollary, the above-cited cases hold that jury instructions given in the disjunctive are not prejudicial. See also
 
 United States v. Garrett,
 
 5 Cir., 1978, 583 F.2d 1381, 1387-88. Seeing no reason to depart from this long line of cases, we reject appellant’s argument.
 
 [2]
 

 Another Look Through Glasser Lenses
 

 Appellant contends that the evidence adduced at trial was not sufficient to warrant his conviction on counts 12-39. Specifically, he claims that the Government has not shown that he acted in contemplation of a bankruptcy proceeding or with intent to defeat the bankruptcy laws.
 
 [3]
 
 After a careful review of the record, we disagree.
 
 [4]
 

 In reviewing the sufficiency of evidence to support a jury verdict, we must determine whether “there is substantial evidence taking the view most favorable to the Government, to support [the verdict].”
 
 Glasser
 
 v.
 
 United States,
 
 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704.
 
 [5]
 
 In making this determination, moreover, we recognize that “all reasonable inferences and credibility choices must be made in favor of the jury verdict.”
 
 United States v. Wieschenberg,
 
 5 Cir., 1979, 604 F.2d 326, 330.
 

 As previously stated, appellant contends that with respect to counts 12-39, the Government has not demonstrated that he made transfers in contemplation of bankruptcy proceedings or with intent to defeat the bankruptcy laws. While not contesting the fact that the evidence of his transfers of funds was overwhelming, appellant contends that the only direct evidence that his transfers were intended to defeat the bankruptcy laws or were made in contemplation of bankruptcy came from Candace Winning, an employee of CIC. Ms. Winning testified that sometime during September or October of 1975, appellant told her about the grave financial condition of CIC and the likelihood that it would fall into bankruptcy. Since counts 12-39 involved transfers of funds prior to October, while only count 40 involved a transfer at about the time of
 
 *312
 
 the conversation between appellant and Winning, appellant contends that only count 40 could be based on Winning’s testimony.
 

 We find this argument unpersuasive for two reasons. First, a jury could have reasonably believed from Winning’s testimony that appellant’s comments to her about CIC’s grave financial condition and impending bankruptcy went back at least as far as the spring of 1975.
 
 [6]
 

 Second, even assuming that appellant’s first explicit mention of the prospect of bankruptcy was in September or October, his mention of bankruptcy at that time, when coupled with the comments made by him during .the spring of 1975, provides strong support that he acted in contemplation of bankruptcy proceedings as far back as late spring or early summer of 1975.
 
 [7]
 
 A jury must be allowed to put two and two together. Indeed, the jury’s ver-diet demonstrates that the inferences made concerning appellant’s intent were clearly reasonable. The jury found appellant guilty on counts 12-40, which involved transfers between June 2, 1975, and October 7, 1975, but found him not guilty on counts 1 — 11, which involved transfers of funds between April 4, 1975, and May 30, 1975. The jury’s unwillingness to infer intent with respect to any of these earlier transfers demonstrates a sophisticated verdict, one based on a careful analysis of the evidence.
 

 AFFIRMED.
 

 [1]
 

 . CIC, a trading firm that served as an agent in the buying and selling of chemicals, was formed in 1974 by appellant and Harold Coo-perman. Appellant became CIC’s president, while Cooperman served as its vice-president. ln February of 1975, appellant bought Cooper-man's 40% interest in CIC and the 10% interest held by Cooperman’s son. On January 26, 1976, creditors of CIC filed an involuntary petition of bankruptcy.
 

 [2]
 

 . Considering the role of counsel and the Court’s expected reliance on counsel, we find it disturbing that appellant’s brief does not even mention any of these Fifth Circuit cases. The brief concedes that in the Eighth, Ninth, and Tenth Circuits, when a crime is specified dis-junctively in the statute but charged conjunc-tively in the indictment, the trial judge may properly instruct the jury in the disjunctive. The brief points out, however, that other jurisdictions have held to the contrary, and cites in support a decision by the District Court of the Southern District of New York. The implication is that the Fifth Circuit is now faced with a choice of which rule to adopt. This Circuit made its choice back in 1945, however, and has adhered to it ever since.
 

 [3]
 

 . Appellant, recognizing that we only reach the sufficiency of evidence question if we reject his argument that the Government was improperly permitted to amend its indictment, concedes that the Government was not required to prove both that he acted in contemplation of a bankruptcy proceeding
 
 and
 
 with intent to defeat the bankruptcy laws. He claims, however, that with respect to counts 12 39, the Government has shown
 
 neither
 
 of these elements.
 

 [4]
 

 . The Government concedes that we cannot avoid reviewing the record by invoking the concurrent sentence doctrine. As we often do, where a trial court has imposed concurrent sentences on each count o{ a multicount indictment and an appellant challenges the sufficiency of the evidence, after finding sufficient evidence to support one count, we avoid ruling on the sufficiency of evidence with respect to the other counts by relying on the concurrent sentence doctrine. See, e. g.,
 
 Hirabayashi v. United States,
 
 1942, 320 U.S. 81, 85, 63 S.Ct. 1375, 1378, 87 L.Ed. 1774, 1778;
 
 United States v. Kelly,
 
 5 Cir., 1978, 569 F.2d 928, 933. In this case, however, even though appellant concedes that there was sufficient evidence with respect to count 40, and even though concurrent prison sentences were imposed, we must still review the sufficiency of the evidence because a separate $500 fine was imposed on each of counts 12 -40.
 

 [5]
 

 . For some of the many recent applications of
 
 Glasser,
 
 see
 
 United States
 
 v.
 
 Pascual,
 
 5 Cir., 1979, 606 F.2d 561;
 
 United States v. Hodges,
 
 5 Cir., 1979, 606 F.2d 520;
 
 United States v. Hitsman, 5
 
 Cir., 1979, 604 F.2d 443;
 
 United States v. Brown,
 
 5 Cir., 1979, 604 F.2d 347.
 

 [6]
 

 . Specifically, Ms. Winning testified:
 

 Q. [Government Attorney]:
 

 [A]round October, 1975, did you have any conversation with Mr. Haymes regarding the financial condition of CIC?
 

 A. [Winning]: Yes.
 

 Q. Approximately when? Was that during the early part of October, 1975?
 

 A. September or October.
 

 Q. That was at the offices of CIC?
 

 A. At the offices of CIC and at—
 

 Q. What, if anything, did he say to you regarding the financial condition of CIC
 

 A. He said that CIC — he said that the company had to create more sales; that it was in bad financial condition; that the company was going to go bankrupt. And at a later time period he said—
 

 Q. Approximately when was this?
 

 A. It was, I believe, at least a few days after the first statement that he said that any of the money in CIC that' is left in the account will be tied up in the bankruptcy and:
 

 “You won’t be able to get hold of it,” and anything that had to be used to be taken out of the account.
 

 ******
 

 Q. Prior to this time had Mr. Haymes made any statement about the financial condition of CIC and possible bankruptcy during the summer months of 1975?
 

 [Defense Attorney]: Let me object to the form of the question. It is generalized. The summer of 1975? We’re talking about September and October—
 

 THE COURT: I will overrule the objection. You can cross examine on that, counsel.
 

 THE WITNESS:
 
 The whole time he was concerned about getting sales generated, there was litigation pending with different companies and decreasing sales. And we were getting in a position to where the company was going to be bankrupt because the cash flow was not coming in.
 

 BY [Government Attorney]:
 

 Q.
 
 Approximately what would you say was the area of time when these conversations came about?
 

 A.
 
 It was at least the spring or summer of 1975. It was before that, whenever sales started in decreasing, and the concern started coming on that we had to get more sales generated. So, I would really have to say it was around the winter of 1974 we started seeing the decrease in sales.
 

 As the italicized language reveals, one reasonable inference from Winning’s testimony is that appellant revealed that he was acting in contemplation of bankruptcy proceedings as early as the spring of 1975 or even the winter of 1974.
 

 [7]
 

 . Nor can we ignore the strong evidence that between April 14, 1975, and October 7, 1975, Haymes received over $300,000 in loans and salary from CIC. And the evidence revealed that even as early as January of 1975, the net worth of CIC was only $280,000.