**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brenda Lee PIGRUM and Clarence Allen, Defendants–Appellants.**

No. 90–1310.

United States Court of Appeals,
Fifth Circuit.

Jan. 16, 1991.

---

James D. Minor, Oxford, Miss. (court-appointed), for Pigrum.

David O. Bell, Oxford, Miss. (court-appointed), for Allen.

Charles W. Spillers, Asst. U.S. Atty., Robert Q. Whitwell, Asst. U.S. Atty., Oxford, Miss., for U.S.

Before WISDOM, KING and JOLLY, Circuit Judges.

KING, Circuit Judge:

Appellant Clarence Allen (Allen) was convicted on one count of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841 and one count of carrying and using a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(c). For his conviction for possession of cocaine, Allen was sentenced to twenty-one months of imprisonment. For his firearm conviction, he was sentenced to sixty months, consecutive to the sentence for the possession of cocaine conviction. Appellant Brenda Pigrum (Pigrum) was convicted on one count of possession of cocaine with intent to distribute, also in violation of 21 U.S.C. § 841, and was placed on probation for a term of five years, with a requirement that she live in a community

correction center for a period of six months. We affirm Allen's convictions, but vacate his sentence and remand for resentencing. We vacate Pigrum's conviction for insufficiency of the evidence.

## I.

The record reflects that on June 15, 1989, shortly after 8 p.m., Mississippi Bureau of Narcotics (MBN) agent Charles Smith and Benton County Sheriff A.A. McMullen sent a confidential informant to Allen's residence to make a controlled purchase of cocaine in order to obtain probable cause for the issuance of a search warrant. Smith searched the informant prior to sending him into the residence, and gave him twenty dollars in marked money. Agent Smith also equipped the informant with a concealed transmitter. Agent Smith and Sheriff McMullen then followed the informant to Smith's residence. Listening via the transmitter, Agent Smith and Sheriff McMullen heard the cocaine sale at Allen's house, and the informant purchased $20 worth of cocaine packaged in a piece of paper torn from a magazine. Immediately thereafter, the informant turned over the cocaine to Agent Smith. Agent Smith and Sheriff McMullen then obtained a search warrant for the house.

At approximately 9:45 p.m., Agent Smith and two MBN agents, as well as the sheriff, and two of his deputies, and two United States Customs Agents arrived at Allen's house to execute the search warrant. Agent Smith and one of the Customs Agents went to the front door. A wooden door was open, but a wrought iron and glass door was locked.

Agent Smith knocked and saw Pigrum coming to the door. Agent Smith announced that they were the police and that they had a search warrant for the residence. He ordered Pigrum to open the door. Pigrum turned around and shouted, "Clarence, it is the police." Agent Smith said, "Brenda, open the door now." Pigrum then unlocked the door.

At the same time as the front door operation was underway, one of the MBN agents and other officers entered through a side door. Before entering the house, the MBN agent saw Allen seated at the kitchen table with two other men. When Pigrum shouted that the police were there, Allen and the two men started to get up. At that point, the MBN agent and other officers entered with their guns drawn and ordered Allen and the two other men to raise their hands. All three sat back down at the kitchen table with their hands in the air.

The MBN agent had a clear view of Allen's body, including his legs. Allen asked to read the search warrant and picked it up with both hands and held it up as if to read it. He then lowered his right hand to the inside of his legs and moved his legs slightly apart. As he did so, the MBN agent noticed the butt of a pistol sticking out from under Allen's leg near his hand. The MBN agent ordered Allen to raise his hands, but only after the agent cocked his pistol did Allen remove his hand from near the pistol and raise his hand.

Allen stood up, revealing a .22 caliber revolver on the seat of the kitchen chair. The pistol was loaded with three bullets.

Approximately one-half ounce (14.2 grams) of 50% cocaine was found in Allen's pants pocket, and a "rock" of cocaine was found in a leather pouch on Allen. A ziplock bag containing 1.1 grams of marijuana was found outside the window behind Allen.

When the agents entered the house, they found an array of drug paraphernalia in plain view on the kitchen table in front of Allen, including:

(1) a mirror, razor blade and knife;

(2) a set of scales which subsequently was found to contain cocaine residue;

(3) a coffee cup containing a test tube which was also found to contain cocaine residue; and

(4) a set of scales in a box.

The agents also seized a home-made pipe containing cocaine residue, a fluorescent blacklight, a large piece of glass containing cocaine residue, and a vase containing a powdery substance (subsequently identified as a cutting agent) with a trace of marijuana in it.

The $20 in marked money used to make the earlier controlled drug was found in Allen's wallet, as was $396 in small bills. On the floor next to Allen was a magazine with a torn page which matched the piece used to wrap the cocaine sold to the informant in the controlled buy.

Testimony at trial indicated that the common street quantity of cocaine was one-fifth of a gram, which sold for $20. The 14.2 grams of 50% cocaine seized would have furnished 71 sales at $20 for a total value of $1420, and more if it had been further diluted.

## II.

### A.

Allen's first argument on appeal was that the district court erred in denying his motion to suppress the evidence seized in the search of his residence because there was no probable cause for the issuance of the search warrant. Allen argues further that the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, *see Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975), thereby precluding a good faith exception to the exclusionary rule under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We disagree as to both points, but address only the latter one. *United States v. Maggitt*, 778 F.2d 1029, 1033 (5th Cir.1985), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2920, 91 L.Ed.2d 548 (1986) (where case does not raise a question of broad import, but instead is limited to whether the facts set forth in the affidavit established probable cause, it is appropriate to consider whether the officers objectively relied on the warrant, without deciding whether the warrant was issued on a showing of probable cause).

Under the good faith exception to the exclusionary rule, evidence will be admitted in the prosecution's case-in-chief if it is obtained by law enforcement officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate. This is so even if the affidavit on which the warrant was based is insufficient to establish probable cause. *Leon*, 468 U.S. at 927–28, 104 S.Ct. at 3423 (Blackmun, J., concurring); *Maggitt*, 778 F.2d at 1034. We agree with the United States that under a *Leon* analysis, the issue is not whether the issuing judge made a proper determination of probable cause, but whether the agents reasonably relied on the judge's determination in light of the information set forth in the affidavit. *See United States v. Gant*, 759 F.2d 484 (5th Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985).

Exclusion of evidence, therefore, is an appropriate remedy if the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring); *Gant*, 759 F.2d at 487 (citing *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420). Thus when a warrant application is supported by more than a "bare bones affidavit" containing wholly conclusory statements, it is appropriate for officers to rely on the warrant's validity. *Maggitt*, 778 F.2d at 1035; *United States v. Settegast*, 755 F.2d 1117, 1122 n. 6 (5th Cir.1985).

The affidavit in this case was more than a "bare bones" affidavit.[1] The affida-

---

1. The affidavit stated:

I, Agent Chuck Smith, being a sworn agent with the MS Bureau of Narcotics and have been with the Bureau of Narcotics for approximately seven months. I also was an officer with the Tupelo Police Department for approximately two years. I have attended the Jackson Police Training Academy for nine weeks. During the time I have been with the MS Bureau of Narcotics I have assisted in the preparation and execution of search warrants.

I have met with the assistance of a reliable confidential informant and the assistance of Sheriff A.A. McMullen made a controlled purchase of a quantity of cocaine from the residence of Clarence Allen and from Clarence Allen within the last 48 hours. The reliable confidential informant has seen a quantity of marijuana in the residence. Also I know Clarence Allen to be a drug violator and is currently out on bond from an arrest made by the MS Bureau of Narcotics in December of

vit furnished to the state Justice Court judge sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched. Therefore, the officers' reliance on that judge's determination of probable cause was objectively reasonable.

### B.

Allen next argues that he was prejudiced because the court amended the indictment concerning the possession charge. Under the statute, 18 U.S.C. § 924(c)(1), "whoever, during and in relation to any … drug trafficking crime … uses *or* carries a firearm" commits an offense against the United States. (emphasis added). The indictment, however, charged that Allen "carried *and* used" a firearm. (emphasis added).

The Supreme Court has stated that "a disjunctive statute may be pleaded conjunctively and proved disjunctively." *Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); *United States v. Haymes*, 610 F.2d 309, 310 (5th Cir.1980). This rule applies where, as here, the statute may be violated in more than one way. 18 U.S.C. § 924(c)(1).

In the proposed jury instructions, the instruction offered by the government used the disjunctive "use *or* carry a firearm during and in relation to a drug trafficking crime." Although this instruction was proper under the statute, the defendant objected on the grounds that the indictment pleaded the conjunctive "and." In order to obtain a proper jury instruction, and to reflect the proof at trial that Allen "carried" the firearm, the government moved to amend the indictment. The trial judge granted the motion and amended the indictment by striking "and used" so as to charge that the defendant "carried" a firearm, rather than "carried and used" a firearm.

The jury was properly instructed that under 18 U.S.C. § 924(c)(1) it is a crime to use *or* carry a firearm during and in relation to a drug trafficking crime. Furthermore, the jury was instructed that in order to find the defendant guilty, the government must prove beyond a reasonable doubt that the defendant committed the crime alleged in count one of the indictment—a drug trafficking crime—and that the defendant *carried* a firearm during and in relation to the defendant's commission of the drug trafficking crime.

This amendment did not prejudice Allen. Under the original indictment and proper instruction, Allen could have been convicted if the jury found either that he "carried" or "used" a firearm. *See Haymes*, 610 F.2d 309, 310; *United States v. Webb*, 747 F.2d 278, 282 (5th Cir.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). Under the amended indictment, the jury could convict Allen only if it found that he "carried" a firearm during and in relation to a drug trafficking crime. Because the jury had to find that Allen "carried" a firearm, and not that he "carried *or* used" a firearm, the amendment reduced the defendant's exposure to conviction on the firearms charge. Thus, we find no merit to this contention.

### C.

Allen next challenges his convictions on the basis that there was insufficient evidence to sustain them. Our standard of review is to consider the evidence in the light most favorable to the government, including all reasonable inferences that can be drawn from the evidence. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Bell*, 678 F.2d 547 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *United States v. Gonzales*, 866 F.2d 781 (5th Cir.), *cert. denied*, 490 U.S.

1988. Allen was charged with possession of cocaine with intent to distribute. Sheriff McMullen has independent knowledge of Clarence Allen dealing cocaine, the MS Bureau of Narcotics has also made an undercover purchase of cocaine from Clarence Allen in the past and know him to be a dealer of cocaine.

Due to the above information we respectfully request that a search warrant be issued for the residence of Clarence Allen of HWI 72 Benton County, MS.

1093, 109 S.Ct. 2438, 104 L.Ed.2d 994 (1989). The test is not whether the evidence excludes every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except that of guilt, but whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of the evidence. *Bell,* 678 F.2d at 547, 549.

Allen first claims that there was insufficient evidence to convict him of possession of cocaine with intent to distribute. The elements of this first count are that the defendant must (1) knowingly (2) possess cocaine (3) with intent to distribute it. *See United States v. Richardson,* 848 F.2d 509, 511 (5th Cir.1988). Allen's claim concerns the third element—the intent to distribute.

■ Intent to distribute may be proven by circumstantial evidence. In fact, the intent to distribute may be inferred solely from possession of a large quantity of controlled substances. *United States v. Prieto–Tejas,* 779 F.2d 1098, 1101 (5th Cir. 1986). Evidence of the street value and the purity of the controlled substance can also be relevant to the possessor's intent to distribute. *United States v. Sheikh,* 654 F.2d 1057, 1067 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982).

■ In this case, there is ample circumstantial evidence for a reasonable trier of fact to find that the evidence establishes guilt beyond a reasonable doubt. Specifically, MBN Agent Charles Smith testified that Allen had 14.2 grams of cocaine at 50% purity with an estimated total value of $1,400 and more if further diluted. Furthermore, the presence of the cutting agent in the vase was a strong indicator that Allen intended to sell the cocaine. Agent Smith testified that drug sellers used cutting agents to increase the quantity of cocaine available for sales. Smith and Allen himself both said that a user has no need for cutting agents. Furthermore, the drug paraphernalia—razor, mirror and knife—are used by dealers to cut cocaine for distribution and are "tools of the trade" according to Agent Smith. The agents also seized scales which Agent Smith testified could be used to weigh the cocaine. Finally, the jury also heard evidence of a controlled and monitored cocaine buy, as described above. Finally, the $20 bill used by the informant was found in Allen's wallet. In sum, given this evidence, a reasonable trier of fact could find Allen guilty beyond a reasonable doubt of possession of cocaine with intent to distribute.

### D.

■ Allen also claims that there is insufficient evidence to convict him of carrying a firearm in a drug trafficking crime. In order for the jury to convict Allen on the firearm charge, the government must prove that he (1) used or carried (2) a firearm (3) during or in relationship to a drug trafficking crime. *United States v. Onick,* 889 F.2d 1425, 1431 (5th Cir.1989).[2] Allen's claim is that there is not sufficient evidence that he carried a firearm. In order to prove this element of the offense, the defendant

> need not use or brandish a weapon as long as the firearm could facilitate the commission of a crime. Weapons in [defendant's] house could facilitate the commission of a crime because [defendant] could use the guns to protect the drugs and drug paraphernalia. In particular, [defendant] could use the weapons to ward off threats to his drug operation.

*Onick,* 889 F.2d at 1431–32 (citations omitted).

■ In the instant case, a reasonable jury could find that Allen carried a firearm during or in relationship to a drug trafficking crime. Allen was armed with a gun and was sitting at the kitchen table with one-half ounce of cocaine in his pocket and drug paraphernalia on the table. The gun was loaded with three bullets. In fact, the agents drew their weapons because they

---

**2.** In the case at bar, as noted above, the jury instructions in this case substituted the word "carried" for the words "used or carried."

feared that Allen was reaching for his gun on the chair while reading the search warrant. Given this evidence, it is not unreasonable for a trier of fact to infer that Allen carried the pistol to protect his possession of cocaine with intent to distribute. *See United States v. Robinson*, 857 F.2d 1006, 1010 (5th Cir.1988) (jury could reasonably infer that firearm in residence in which drugs are found is an integral part of the crime of possession with intent to distribute).

### E.

■ Pigrum claims that the evidence was insufficient to sustain her conviction for possession of cocaine with intent to distribute. In order to find her guilty of that count, the jury had to find that (1) she possessed illegal drugs (2) knowingly and (3) with intent to distribute. *Onick*, 889 F.2d at 1429. Possession of a controlled substance with intent to distribute can be actual or constructive, and may be proved by circumstantial evidence. *United States v. Galvan-Garcia*, 872 F.2d 638, 640 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989); *United States v. Gardea-Carrasco*, 830 F.2d 41, 45 (5th Cir.1987).

■ "Constructive possession" is ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found. *Onick*, 889 F.2d at 1429. In other words, constructive possession is "the ability to reduce an object to actual possession." *United States v. Caballero*, 712 F.2d 126, 129 (5th Cir.1983) (quoting *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir.1979)).

■ The government contends that Pigrum's involvement is supported by the following evidence: (1) she was present at the time of the search; (2) women's undergarments were found in the bedroom dresser; (3) drug residue and drug paraphernalia were in plain view on the kitchen table and in other areas of the house; (4) when officers arrived at the residence, Pigrum unlocked the door after warning Allen that the police were there; and (5) a cocaine buy was made at the residence a couple of hours before the officers arrived to execute the search warrant.

The government notes that Allen denied, on cross-examination, that Pigrum was living with him at the time the drugs were seized. The government attempts to show that Pigrum resided at the house by arguing that Allen referred to the men at his house, but not to Pigrum, as his "company." By implication, the government argues, because Pigrum was not considered "company" by Allen, the jury could reasonably conclude that she was residing with him.

After examining the record, we find no other support for the government's argument other than as stated above. At oral argument, the government emphasized the fact that when the police came to the front door, the large wooden door was open but the wrought iron and glass door was locked. When Pigrum saw the police, she told Clarence that the police were there before unlocking the door and letting them in. The record, however, does not reflect any undue delay.

In another case with similar facts and even stronger evidence of possession, this court found that evidence to be insufficient. *Onick*, 889 F.2d 1425 (5th Cir.1989). In *Onick*, the police found (1) the defendant's presence on the premises in night clothes; (2) women's clothes in a closet; (3) a photograph of the defendant in a bedroom; and (4) the defendant's presence at an earlier time when a locksmith installed a safe. *Onick*, 889 F.2d at 1429. The *Onick* court noted that mere presence in a room with a person who possessed illegal drugs and knowledge about a drug sale did not establish constructive possession. *Id.* In the instant case, there was no evidence identifying the women's undergarments as belonging to Pigrum, nor was there sufficient evidence to show that she resided in the house. In sum, despite the fact that this court must view the evidence in the light most favorable to the prevailing party, there is, nevertheless, insufficient evidence for a reasonable trier of fact to con-

clude beyond a reasonable doubt that Pigrum possessed cocaine with intent to distribute.

### F.

Allen next argues that the trial court erred in finding that he was an organizer, leader, manager or supervisor pursuant to § 3B1.1(c) of the United States Sentencing Guidelines. The trial court found that Allen was an organizer or supervisor of the criminal enterprise and increased his base offense level by two points.

In his objections to the presentence report, Allen objected to the proposed two point upward adjustment due to his role as an organizer, leader, manager or supervisor under § 3B1.1(c). The district judge, at sentencing, found that Allen was, in fact, an organizer, leader, manager or supervisor and adjusted his sentence accordingly. The judge found that:

> [t]here was one other person involved in this crime with the Defendant. She was convicted also. It is clear to the Court that she was [led] to a certain extent by this Defendant in the commission of these crimes, and he was the manager of it. This—these points are added not for a large organized type activity but only when there are less than five people involved in the crime. If it was a large organization, it would be more points added.

Because the fact of Pigrum's conviction may have been pivotal to the district judge's decision, we vacate Allen's sentence and remand for reconsideration and resentencing.

### III.

For the foregoing reasons, we REVERSE the conviction and VACATE the sentence of Brenda Pigrum; we AFFIRM the convictions of Clarence Allen but VACATE his sentence and REMAND for resentencing.