# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

m 99-50352
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

LILIANA RUIZ CHAVIRA and MARTIN ALONSO CHAVEZ,

Defendants-Appellants.

Appeal from the United States District Court
for the Western District of Texas

February 10, 2000

Before SMITH, BARKSDALE, and PARKER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Martin Chavez was convicted of conspiring to possess with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), and he and Liliana Chavira were convicted of possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1). Chavez challenges denial of a motion to suppress and a three-level upward adjustment in sentencing, and Chavez and Chavira claim the evidence is insufficient to support their convictions. We affirm Chavez's conviction and sentence, but we reverse and remand Chavira's conviction for insufficient evidence.

I.

On October 28, 1998, an informant, Jose Cruz, informed Armando Apodaca of the Metro Narcotics Task Force that a red car loaded with cocaine would be crossing from Mexico and that Cruz would be driving the car to a house in El Paso. Acting on the tip, officers observed Cruz pick up the car and drive it to a house at 500 Dorsey Street. According to Cruz, the car was loaded with forty kilograms of cocaine that he placed in the garage. Officers observed Chavez driving a blue van into the garage, closing the garage door, and according to Cruz, loading the cocaine into the van. Shortly thereafter, the garage door was opened, and Chavez left the premises in the van.

The following day, Cruz notified Apodaca of another such shipment, this time specifying that two Hispanic males driving a blue van with a given license plate number would pick up the shipment. Officers once again observed Cruz drive the red car to the Dorsey house, at which point constant surveillance of the house began.

On October 30, Chavez arrived at the

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

house in the van and knocked on the door, but left after receiving no response. After making a phone call at a nearby convenience store, Chavez returned and knocked again, leaving a second time when there was still no answer. A few hours later, officers spotted the van nearby; Chavez dropped off a man later identified as Jesus Dominguez at the convenience store, and proceeded to the Dorsey home. Chavez backed the van into the garage and closed the garage door, whereupon Cruz observed the cocaine being loaded. Approximately fifteen to thirty minutes later, Chavez left the house and picked up Dominguez at the convenience store.

Officers followed the van to a house at 12457 Robert David Drive, where the van entered the garage, and the garage door was closed. Approximately thirty to forty-five minutes later, Dominguez, with Chavez as passenger, drove the van to a nearby grocery store, where Chavez left the van and entered a gold Nissan Maxima, which he drove away. Chavez was not followed, but Dominguez returned to the house on Robert David in the blue van.

The following day, Dominguez was observed leaving the house in the van twice, driving slowly around the area for hours, and making "heat runs," described as quick U-turns designed to discover whether one is being followed. On the second such excursion, Dominguez ultimately evaded surveillance.

Later that day, officers spotted the van back at the grocery store parking lot and located Chavez driving the Maxima with Dominguez as passenger. The officers believed the two were attempting to discover the surveillance, by driving very slowly, making frequent stops, and making several heat runs; they also witnessed them using two-way radios. Two marked units pulled over the Maxima, and officers arrested Chavez and Dominguez.[1]

A search of the Nissan yielded a piece of paper on which were written the license plate numbers of three vehicles involved in the surveillance, two-way radios, approximately $2,000 in cash, two garage door openers, and an advertisement with the address 11640 McAuliffe. Officers later determined that one garage door opener operated the door at the Robert David residence, and one operated the door at 11640 McAuliffe, a location at which officers had seen Dominguez and Chavez previously.

Chavez claimed that he was staying at the 11640 McAuliffe residence while the owners were out of town. A consent search of that residence located no contraband but did locate a hidden compartment in the kitchen area.

Dominguez consented to a search of his van, in which no relevant evidence was found. Dominguez likewise gave consent to search the house on Robert David, where he informed the officers that he lived with his common-law wife, Chavira, and her child. On arrival at the residence, Chavira was informed of Dominguez's consent to a search of the residence for evidence of narcotics activity; she asserted that she was not aware of any drugs being kept there, but she did not object to the search. Officers located approximately 716 pounds of cocaine in two secret compartments of the home; the compartment design was similar to that found in the McAuliffe residence.

Following denial of motions to suppress, Chavez and Chavira were tried together for conspiring to possess with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) ("the conspiracy count") and possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) ("the possession count").[2] The court granted Chavira a judgment of acquittal on the conspiracy count but denied acquittal motions on the remaining counts. The jury found Chavez guilty on both counts and Chavira guilty on the possession count.

---

[1] The parties stipulated that an arrest occurred when the Maxima was stopped.

[2] Dominguez was also a co-defendant, but he is not involved in this appeal.

## II.

Chavez contends that his arrest was illegal, and therefore that the court erred in denying his motion to suppress evidentiary fruits of that arrest. In reviewing a denial of a motion to suppress, we view the evidence in the light most favorable to the party that prevailed in the district court, here the government, and consider the evidence offered at the suppression hearing and the evidence admitted at trial. *See United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063, *and cert. denied*, 522 U.S. 1131 (1998).

Because Chavez was arrested without a warrant, probable cause was required. *See United States v. Ramirez*, 145 F.3d 345, 352 (5th Cir.), *cert. denied*, 525 U.S. 1046 (1998).

> Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. The presence of probable cause is a mixed question of fact and law. This court will not disturb the factual findings of the district court absent clear error. Accepting these facts, the ultimate determination of whether there is probable cause for the arrest is a question of law to be reviewed *de novo*.[3]

*Id*. (internal citations omitted). "Although probable cause requires more than a bare suspicion of wrongdoing, it requires substantially less evidence than that sufficient to support a conviction." *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996). The district court found probable cause based on the information provided by the informant Cruz, whom the court found to be reliable, and on the suspicious driving activity observed by surveillance officers, and we agree.

Cruz twice informed Apodaca that he would be driving a red car containing a load of cocaine to the Dorsey house, and was observed driving a red car to the house on both occasions. Cruz further informed Apodaca that Hispanic males in a blue van with a specified license plate were going to pick up the cocaine, and Chavez was observed driving the van into the garage of the Dorsey house following each of Cruz's visits (on the second of which Chavez dropped off Dominguez immediately before the brief stop).

Cruz informed Apodaca that he personally observed the van being loaded with the cocaine. Cruz was deemed credible because he had been providing reliable information on narcotics transactions to Apodaca for over a year.[4] Chavez and Dominguez were observed performing counter surveillance measures in their vehicles. The totality of facts and circumstances provided probable cause to arrest.

## III.

Chavez claims insufficiency of the evidence. "In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999). This review is *de novo*, and "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." *Id.* (internal quotation marks omitted).

---

[3] These likewise are the general standards of review for denial of a motion to suppress. *See Ramirez*, 145 F.3d at 352.

[4] Although Chavez stresses that Cruz's past information had not led to arrests, this is not dispositive. In *United States v. Carrillo-Morales*, 27 F.3d 1054, 1057 n.1 (5th Cir. 1994), we found probable cause partially based on a tip from an informant with whom the officer had had no prior experience. As in the case *sub judice*, the information was corroborated by subsequent investigation and surveillance.

On the conspiracy count, the government had to prove "(1) that an agreement existed to violate federal narcotics laws; (2) that the defendant knew of the existence of the agreement; and (3) that the defendant voluntarily participated in the conspiracy." *Gonzales*, 121 F.3d at 935. These elements may be established by circumstantial evidence and "may be inferred from the development and collocation of circumstances." *Id.* (internal quotation marks omitted).

> The agreement between the co-conspirator[] and the defendant need not be proved by direct evidence, but may be inferred from concert of action. Such action may be inferred from the circumstances as a whole. Acts which are not per se unlawful lose that character when cumulatively viewed as the constituent elements of a criminal conspiracy.

*United States v. Morris*, 46 F.3d 410, 420 (5th Cir. 1995) (internal quotation marks and citation omitted).

There is sufficient evidence to support Chavez's conspiracy conviction. He twice drove the van to the Dorsey house; Cruz testified that he witnessed Chavez load the van with cocaine on those occasions. On the second trip, Chavez dropped off Dominguez before reaching the destination, picked up Dominguez on the return, and drove the van into the garage of Dominguez's residence on Robert David. Chavez performed heat runs and other counter surveillance measures in his Maxima, with Dominguez as passenger, in which vehicle was found a listing of the license plate numbers of three surveillance vehicles.

The McAuliffe residence in which Chavez was residing, and to which Chavez and Dominguez had traveled previously, contained a secret compartment similar to those in the Robert David residence in which the cocaine was found. This evidence is sufficient to prove that Chavez and Dominguez had an agreement to violate federal narcotics laws and that Chavez knew of the agreement, and voluntarily participated in it.

On the possession count, the government had to prove "(1) knowing (2) possession of a controlled substance (3) with intent to distribute it." *Gonzales*, 121 F.3d at 936. Possession may be actual or constructive, the establishment of which can depend on circumstantial evidence and inference therefrom. *See United States v. Jones*, 133 F.3d 358, 362 (5th Cir.), *cert. denied*, 523 U.S. 1144 (1998); *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). "'Constructive possession' is ownership, dominion, or control over illegal drugs or dominion over the premises where drugs are found. In other words, constructive possession is the ability to reduce an object to actual possession." *United States v. Pigrum*, 922 F.2d 249, 255 (5th Cir. 1991) (internal quotation marks and citation omitted).

The evidence is sufficient to sustain Chavez's possession count. Not only was Cruz's testimony evidence of actual possession, but the evidence further supports a reasonable inference that Chavez had knowing access to, and control over, the cocaine at the Robert David residence. The amount of cocaine discovered, 716 pounds, provides an inference that it was meant for distribution: "Intent to distribute a controlled substance may generally be inferred solely from possession of a large amount of the substance." *United States v. Prieto-Tejas*, 779 F.2d 1098, 1101 (5th Cir. 1986); *see also Gonzales*, 121 F.3d at 936.

IV.

Chavira claims there is insufficient evidence that she knowingly possessed cocaine. She was Dominguez's common-law wife, and she

and her child at least sometimes resided at the Robert David house. On the day the house was searched, an officer observed Chavira leave the residence with Dominguez and her child and travel to a nearby Wal-Mart, where she "look[ed] around from left to right, and also behind her." The officer believed she was trying to discover whether anyone had followed her, even though her "looking around" took place approaching a crosswalk.

Chavira and her child were at the residence when officers arrived to search it; informed of their purpose, she replied that she was not aware of any drugs in the home. After Chavira, Dominguez, and Chavez were arrested, they were transported to jail, where Chavira was observed pleading with Dominguez to provide officers with information which would help her and her child.

The cocaine was found in secret compartments located in the closets of the master bedroom and the child's bedroom, and Chavira's purse was found in the closet of the master bedroom. To transfer cocaine from the garage to the bedroom closets, one would have to walk through common areas of the house, including the kitchen and living room. To gain access the secret compartments, one had to remove shelves in the closet, turn on an electrical supply source, and push an electrical switch to open a hidden door.

The government contends that Chavira constructively possessed the cocaine. When there is joint occupancy of a location, however, mere control or dominion over the place in which contraband is found is insufficient for constructive possession: "[S]omething else (e.g., some circumstantial indicium of possession) is required besides mere joint occupancy before constructive possession is established. . . . [There must be] some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the . . . contraband." *United States v. Mergerson*, 4 F.3d 337, 349 (5th Cir.

1993).[5]

We have rejected findings of constructive possession under somewhat analogous circumstances. In *United States v. Pigrum*, 922 F.2d 249 (5th Cir. 1991), a female defendant was present at a co-defendant's house during a search that produced cocaine. Women's undergarments were found in the bedroom dresser; drug residue and drug paraphernalia were in plain view throughout the house; when officers arrived, the defendant unlocked the door only after warning her codefendant that the police were present; and a cocaine buy was made at the residence a couple of hours before the officers arrived to execute the search. *See id.* at 255. There was no evidence, however, either that the undergarments belonged to the defendant or that she generally resided in the house. We concluded that there was insufficient evidence of constructive possession.

In *United States v. Onick*, 889 F.2d 1425, 1429 (5th Cir. 1989), police discovered the female defendant in nightclothes at the house when they searched it; a bedroom closet contained women's clothing; there was a photograph of the defendant in one of the bedrooms; and the defendant was present at the house at an earlier time when a locksmith installed a safe. We concluded that the evidence was insufficient to show that the defendant constructively possess drugs found at the house.

---

[5] Although the elements of possession and scienter (knowing) are theoretically distinct, in the realm of constructive possession they tend naturally to overlap. Constructive possession is "the knowing exercise of, or the knowing power or right to exercise, dominion and control over the proscribed substance." *United States v. Brito*, 136 F.3d 397, 410 (5th Cir.), *cert. denied*, 523 U.S. 112, *and cert. denied*, 524 U.S. 962, *and cert. denied*, 525 U.S. 867 (1998). *See also United States v. de Leon*, 170 F.3d 494, 497 (5th Cir.), *cert. denied*, 120 S. Ct. 156 (1999). Whether we term it a failure to prove possession or a failure to prove the required scienter, the result is the same.

While there is evidence that Chavira jointly occupied the house with Dominguez, there is no further evidence supporting a plausible inference that she had knowledge of and access to the cocaine. Although conducting counter surveillance measures such as heat runs is suspicious, testimony that Chavira was observed looking around on her way to Wal-Mart is not nearly so probative.

That the cocaine had to pass through common areas of the house to reach the compartments does not implicate Chavira without some evidence that she was present during any such transfer. Unlike the circumstance in *Pigrum*, in which evidence of drugs was in plain view, access to the cocaine in the secret compartments in the closets required the removal of shelves, the turning on of an electrical supply source, and the pushing of a switchSSa detective testified that the secret compartments were very sophisticated, "the best [he had] ever seen." Therefore, the presence of Chavira's purse in one of the closets does not allow the inference that she therefore knew of the presence of the drugs.

The government also relies on Chavira's statements as inferentially proving guilty knowledge, but they are just as indicative of innocence as of guilt. When officers informed Chavira of the purpose of the search, she responded that to the best of her knowledge there were no drugs at the house.

The government attempts to make use of the nervous/not nervous dichotomy, arguing that Chavira was not nervous *enough* when asked the question, demonstrating a guilty conscience.[6] Nervous behavior, such as countersurveillance measures, *before* one is confronted by police, is more probative than is one's reaction to an actual confrontation. *See, e.g.*, *Carrillo-Morales*, 27 F.3d at 1065. While nervousness, or lack thereof, during a confrontation may also sometimes be probative, nothing about Chavira's response

demonstrates a consciousness of guilt.[7] Likewise, the fact that she pleaded with her husband to provide authorities with information that would help her and her child is no more indicative of guilt than it is of innocence.

The totality of the evidence against Chavira amounts to nothing more than residing at the house where the cocaine was found and her close association with Dominguez, which is not sufficient to prove constructive possession. *See United States v. Steen*, 55 F.3d 1022, 1032 n.23 (5th Cir. 1995). We therefore reverse her conviction for insufficient evidence.[8]

V.

Chavez contends that the court erred in giving him a three-level upward adjustment based on his aggravating role in the offense pursuant to U.S.S.G. § 3B1.1(b), which provides such an enhancement if "the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." The presentence investigation report recommending the adjustment does not specify

---

[6] There was trial testimony that she was "very calm" but also that she was "a little bit nervous."

[7] While we have recognized both nervousness and an absence of nervousness as circumstantial evidence of guilty knowledge, we also have criticized government attempts to use such evidence when it lacks probative value. *See United States v. Ortega Reyna*, 148 F.3d 540, 544-45 (5th Cir. 1998). The government urges Chavira's general calm composure and submission to the search as evidence of guilty conscience, but as in *Ortega* we postulate that had Chavira been nervous and vehemently objected to the search, the government would have argued that *this* behavior, as well, justified an inference of guilty knowledge. *See id.*

[8] The government argues that, in the alternative, Chavira's conviction can be sustained on a theory of aiding and abetting. Because the court did not instruct the jury on aiding and abetting, this contention is incorrect. *See Brito*, 136 F.3d at 410 n.18. Regardless, there is no evidence that Chavira associated with the criminal activity or acted to help it succeed. *See Gonzales*, 121 F.3d at 936.

whether the criminal activity was considered to involve five or more participants or whether it was "otherwise extensive," and the court did not clarify the basis for the increase, merely terming Chavez a "manager."

Because Chavez did not raise this issue at or before sentencing, we review for plain error. *See United States v. Lopez*, 923 F.2d 47, 49 (5th Cir. 1991).

'Plain error' is error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity, or public reputation of judicial proceedings . . . . Review for plain error is uniquely addressed to the appellate court's discretion. Questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error.

*Id*. at 50. A ruling on a defendant's role in the offense is a factual determination. *See United States v. Navarro*, 169 F.3d 228, 234 (5th Cir.), *cert. denied*, 120 S. Ct. 117, 312 (1999); *United States v. Posada-Rios*, 158 F.3d 832, 878 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1280, 1487, 1792 (1999). Therefore, we need not reach the merits of Chavez's argument; the court did not commit plain error.

Chavira's judgment of conviction is REVERSED and REMANDED for entry of judgment of acquittal, and Chavez's judgments of conviction and sentence are AFFIRMED.

7