# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and LEVIN[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E1 CLARENCE P. WILLIAMS**
**United States Army, Appellant**

ARMY 20160623

Headquarters, III Corps and Fort Hood
Douglas Watkins, Military Judge (arraignment & motions hearing)
G. Bret Batdorff, Military Judge (trial)
Colonel Travis L. Rogers, Staff Judge Advocate (pretrial)
Colonel Susan K. Arnold, Staff Judge Advocate (post-trial)

For Appellant: Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Julie L. Borchers, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA; Captain Jeremy Watford, JA (on brief).

21 August 2018

---------------------------------
OPINION OF THE COURT
---------------------------------

LEVIN, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of assault consummated by battery, in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 928 (2012) [UCMJ]. The military judge acquitted appellant of three specifications of sexual assault. The military judge sentenced appellant to a dishonorable discharge and confinement for four years. The convening authority approved the findings and sentence as adjudged.

---

[1] Judge Levin decided on this case while on active duty.

Appellant's case is before this court for review under Article 66, UCMJ. Appellant raises two errors. Both merit discussion but not relief.[2] First, appellant contends the evidence was legally and factually insufficient to prove, beyond a reasonable doubt, appellant is guilty of one specification of sexual assault. Second, appellant alleges his trial defense counsel were ineffective in his presentencing case.

## BACKGROUND

Appellant was convicted of sexually assaulting two women and assaulting a third. The facts relevant to his actions against one of those victims, Ms. MG, are set forth below.

On 14 August 2015, Ms. MG, a dancer at an adult entertainment club, consumed seven to eight shots of alcohol during her shift that night. Once her shift ended, Ms. MG arranged for a ride with a female co-worker. The two went to the co-worker's home at Fort Hood, Texas, as Ms. MG was unable to provide directions to her own residence. After arriving at the co-worker's home, appellant called Ms. MG and offered to pick her up.

At this point, Ms. MG had known appellant for approximately one year, as he was a regular customer at her place of employment, and she felt more comfortable with him than with her co-worker, whom she did not know as well. After picking up Ms. MG, appellant returned with her to his barracks room. There, Ms. MG drank a shot of tequila and fell asleep in appellant's bed, fully dressed, and exhausted from her shift at work. According to Ms. MG, she was a heavy sleeper and drinking made her sleep more heavily.

When Ms. MG awoke, she found that she was wearing only a thong, her vagina was sore, and she felt a wetness like semen in her underwear, causing her to believe she had had sexual intercourse. Appellant was not to be found, nor were Ms. MG's money, identification, and bank card. Ms. MG immediately called 911 and thereafter went to the hospital where a sexual assault forensic examination was performed. Appellant's semen was found on Ms. MG's labial, perianal, and anal swabs. Although insufficient amounts were found on the vaginal and cervical swabs for an identifiable profile, male DNA was found on those swabs.

At trial, appellant testified Ms. MG had danced and stripped for him in his barracks room, eventually allowing him to masturbate and ejaculate on her buttocks. Appellant's testimony contradicted both that of Ms. MG and that of another witness. Prior to trial, appellant told a friend he had asked Ms. MG to have sex with him in his barracks room, but she had declined and the two then went to sleep.

---

[2] We have also considered the matters asserted by appellant under *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), they merit neither discussion nor relief.

**LAW AND DISCUSSION**

*General Verdicts*

Appellant asserts his conviction of Specification 4 of Charge I is legally and factually insufficient. We disagree. We find appellant was properly convicted under a general verdict.

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses" we are "convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

The test for legal sufficiency is "whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Humphreys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). Weighing questions of legal sufficiency, this court is "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

Article 120(b)(2), UCMJ, in relevant part, provides that a person commits sexual assault if he or she: "[c]ommits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, *or* otherwise unaware, that the sexual act is occurring." Article 120, UCMJ (emphasis added).

Here, the government charged appellant with sexual assault, where the victim was "asleep, unconscious, *and* otherwise unaware." (emphasis added). The military judge convicted appellant as charged. Consequently, appellant frames this issue as a challenge to the legal and factual sufficiency of his conviction, arguing that the evidence failed to meet all three theories of liability. Appellant's framing of this issue misapprehends the significance of facts alleged in the conjunctive.

"The crux of the issue is whether a fact constitutes an element of the crime charged, or a method of committing it." *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007). If a fact is a theory of liability and not an element, then it is "well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the [court] can instruct the jury in the disjunctive." *United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009) (citations omitted); *see also United States v. Farish*, 535 F.3d 815, 823-24 (8th Cir. 2008); *United States v. Haymes*, 610 F.2d 309, 310 (5th Cir. 1980); *United States v. Gunter*, 546 F.2d 861, 868-69 (10th Cir. 1976). Our sister court recognized this principle by stating, "when a statute provides for alternative means by which an offense can be committed, the

charge should use the conjunctive 'and' rather than the disjunctive 'or'." *United States v. Woode*, 18 M.J. 640, 641 (N.M.C.M.R. 1984) (citations omitted).

Further, our superior court has explained that general verdicts are allowed when multiple theories of liability are alleged.

> With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.' In returning such a general verdict, a court-martial panel resolves the issue presented to it: did the accused commit the offense charged, or a valid lesser included offense, beyond a reasonable doubt? A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt.

*Brown*, 65 M.J. at 359 (quoting *United States v. Hardy*, 46 M.J. 67, 73 (C.A.A.F. 1997) (citation omitted).

To determine whether a general verdict on a specification alleging multiple theories of liability is proper, we must first determine if the relevant statute creates separate elements, or merely different theories of liability. In *United States v. Sager*, our superior court held that, under Article 120(b)(2), the words "asleep, unconscious, or otherwise unaware" constitute three alternate theories of liability under which an accused can be found guilty; they are not examples of one theory, nor are they separate elements. 76 M.J. 158, 161-62 (C.A.A.F. 2017).

In this case, therefore, a general finding of guilty under Article 120(b)(2) was not dependent on the military judge finding the appellant guilty under all three theories but, rather, at least one theory. Charging in the conjunctive does not bind the government to prove each theory charged to secure a conviction. Appellant was on notice the Government was pursuing all three theories, and under the recognized principle of "plead in the conjunctive, prove in the disjunctive," the military judge's general finding of guilty was proper so long as at least one theory was proved beyond a reasonable doubt.

Had this been a panel case, the military judge would have instructed the members in the disjunctive even though the offense was charged in the conjunctive. *See Brown*, 65 M.J. at 359 (C.A.A.F. 2007) (members may be instructed in the disjunctive if the fact at issue deals with a method of committing the crime as opposed to an actual element of the crime.) "[M]ilitary judges are presumed to

know the law and follow it, absent clear evidence to the contrary." *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F.1997). As part of this presumption, we further presume the military judge understood the Government's burden to prove in the disjunctive and made his general finding of guilty accordingly. It was not necessary for the military judge to make findings by exception as long as the Government proved all of the elements of the offense under at least one theory charged. *See United States v. Vidal*, 23 M.J. 319, 325 (C.M.A. 1987).

This court, of course, is bound to review the facts of this case not just for legal sufficiency but also for factual sufficiency under Article 66(c), UCMJ. In light of our superior court's holding in *Sager* that "otherwise unaware" means unaware, but neither asleep nor unconscious, we are not ourselves personally convinced that Ms. MG was "otherwise unaware." We are not convinced Ms. MG was "otherwise unaware" precisely because we are convinced, beyond a reasonable doubt, that she was asleep and unconscious when appellant sexually assaulted her, and therefore she was not unaware in a manner other than being asleep and unconscious.

Appellant claims the three theories, "asleep," "unconscious," and "otherwise unaware," are mutually exclusive. We disagree in part. Our superior court explained in *Sager* that "otherwise unaware" is a theory different from "asleep" and "unconscious" because "otherwise" modifies "unaware" to mean "unaware in a manner different from asleep and different from unconsciousness." *Sager*, 76 M.J. at 162. "Otherwise," however, only modifies "unaware." "Otherwise" does not modify "unconscious." Congress could have written the statute to read, "asleep, otherwise unconscious, or otherwise unaware," but it did not. While "otherwise" distinguishes unawareness from both sleep and unconsciousness as a theory of liability, nothing categorically separates sleep and unconsciousness from each other in the statute as written. Therefore, a person may be both "asleep" and "unconscious" within the meaning of Article 120(b)(2).

Here, ample evidence compels us to conclude, beyond any reasonable doubt, that Ms. MG was both asleep and unconscious when appellant penetrated her vulva with his penis. Ms. MG testified that upon laying down on the bed she "fell asleep right away" because she was "exhausted" and she "felt like [she] passed out when [she] went to sleep." Ms. MG did not wake up when appellant undressed her and penetrated her vagina with his penis. By any reasonable standard, Ms. MG was asleep and, indeed, unconscious. By that same token, Ms. MG could not have been unaware in a manner different from both sleep and unconsciousness. This does not, however, change the form of the verdict. "A factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." *Brown*, 65 M.J. at 359.

5

Accordingly, we affirm the trial court's general verdict as it stands.

*Ineffective Assistance of Counsel*

To establish ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green,* 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)) (citations omitted). In order to establish deficient performance, an appellant must establish that counsel's "representation amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland,* 466 U.S. at 690).

Appellant claims his trial defense counsel were ineffective by failing to investigate for possible evidence in extenuation and mitigation and for failing to present any evidence during presentencing other than appellant's ERB. For the reasons that follow, appellant's assertion that his lawyers' trial strategy amounted to ineffective assistance of counsel fails on its merits.

We begin by determining whether trial defense counsel's performance fell within the "wide range of reasonable professional assistance." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689) (citations omitted).

Appellant's defense counsel submitted affidavits explaining how the defense team attempted to investigate various theories of extenuation and mitigation. The defense team's investigation yielded little due to appellant's continued uncharged misconduct and history of disreputable behavior.

While defense counsel might normally be expected to call a witness during the presentencing phase of a trial, their performance is not deficient when a tactical reason cautions against doing so. *Id.* at 424 (stating that "objectively reasonable" tactical decisions cannot constitute deficient performance); *Strickland*, 466 U.S. at 689 (creating presumption that challenged action had strategic purpose).

Such is the case here. As defense counsels' affidavits reveal, the choices they made were considered ones. First, they made a strategic and tactical decision not to call appellant's substance abuse counselor or his psychologist, believing neither provider's testimony would be helpful for rehabilitative purposes, and further believing that the former's testimony would actually be detrimental.

Appellant's trial defense counsel made a strategic and tactical decision not to call other witnesses. As counsel indicated in their affidavits, they determined some potential witnesses would also lead to damaging testimony for appellant. For

instance, they were concerned that calling appellant's wife would lead to a harmful cross-examination that highlighted appellant's infidelity during his marriage. Defense counsel were also concerned that calling appellant's supervising noncommissioned officer would be counterproductive due to appellant's continued misconduct while pending trial. As to other potential witnesses, they declined to testify on appellant's behalf. We also accept defense counsel's reasonable explanation for not submitting a "good soldier book:" "I do not believe he had anything for a good soldier book because he was so new to the army [sic] and he continued committing misconduct. I believe we asked for school awards as well, but he had none."

Appellant has failed to overcome the strong presumption that his counsels' performance was within the wide range of reasonable professional assistance. Without deficient performance, there can be no ineffective assistance.

Even were we to assume deficient performance, there was no prejudice to appellant. He faced a maximum sentence of sixty years and six months' confinement for his misconduct against three women. The government asked the military judge to impose a sentence of twenty years' confinement. Ultimately, the judge imposed a sentence one-fifth of that for which the government argued and less than ten percent of appellant's maximum exposure.

Based on the facts of this case, we hold that appellant has failed to establish ineffective assistance of counsel.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7